[Civ. No. 8699.  First Appellate District, Division Two.—March 9, 1933.]

MRS. MINNIE E. McNAMARA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, METROPOLITAN CONTRA COSTA LAUNDRY COMPANY et al., Respondents.

Stanley R. Sterne for Petitioner.

A. I. Townsend, B. E. Pemberton and Henry G. Sanford for Respondents.

STURTEVANT, J.—This is a proceeding to obtain a death benefit for the widow of D. S. McNamara, who died on Monday, October 12, 1931. The defendant Commission denied the application and she has asked for a writ of review.

In the year 1925 the decedent entered the employ of the Metropolitan Contra Costa Laundry Company. He was given employment in driving a Republic truck. The truck had no self-starter and it was necessary to crank it. Sometimes in the morning when it was cold there was some difficulty in starting it. At all times another employee was present to give assistance in doing the cranking if assistance was necessary. At the time the decedent took up the employment the record does not disclose that he was suffering from heart trouble. On October 28, 1927, he underwent a medical examination which revealed that his heart was negative. In October, 1930, another examination indicated a slight reduplication of the mitral sound, but no further evidence of valvular or muscular disease. On September 23, 1931, another examination was made and "he was found to be suffering from mitral regurgitation with good compensation and mild glycosuria. Hospital care was not advised." On Sunday, the day before his death, the dece-

dent suffered two heart attacks and the day before that he suffered one attack, no one of them being preceded by any strenuous exercise. Those attacks lasted two or three hours and he was obliged to remain quiet during that period. On Monday morning he reported for work about 7 A. M. He was seen near his truck and about to crank it. At that time the mechanic was near by, but was not called upon to assist and it is therefore inferred that the decedent cranked. the truck. A little later he went into the building and went up a flight of stairs of even degree consisting of sixteen or eighteen steps to the office to get his orders. Having obtained them, he went downstairs and took his seat in the truck. A few minutes later a pedestrian observed him seated at the wheel, the motor running, but the decedent leaning over in distress. Assistance came to his aid and he was taken to the hospital, but died in a few minutes. His regular route was in a territory which is mostly level. On his list he had at times as many as two hundred and fifty calls during a week. In some places he was required to go upstairs to obtain the bundles or to deliver them. The record discloses that the weights of bundles varied as do the bundles of any ordinary laundry delivery. During the preceding month the deceased had made no complaint regarding the truck and had not asked for assistance to crank it. The petitioner calls attention to the fact that by the terms of section 137 of the California Vehicle Act [Stats. 1923, p. 562] one having charge of a motor vehicle may not leave it standing on any public highway unattended without stopping the motor and that it will be presumed the decedent obeyed the law and therefore cranked the truck after each call he made.

After the death of the decedent, Dr. Tiffany, county surgeon in Oakland, on October 12, 1931, performed an autopsy. He testified that death was caused by hypertrophy of the heart and valvular lesion. He testified that he found an enlarged heart which is called hypertrophy of the heart and an enlargement also of the valves which were not closed completely. Valvular lesion of the heart was the immediate cause of death. A valvular lesion is caused when a heart is overworked and it gives out and sudden death results. Exertion will cause that condition. A long hypothetical question, describing the activities of the decedent for six

years and reciting some of the medical examinations, being propounded to the witness he was asked whether such activities aggravated the cause of death and he replied that they certainly did. Before the day of decedent's death the lesion was present. Any overexertion twenty-four, thirty-six or forty-eight hours prior to the attack would contribute to the death. The witness testified that he had performed a great many autopsies and had examined many hearts. At the time of the autopsy the witness examined the brain, and the meninges, and the coronary arteries. He did not make an histological examination, nor a microscopical examination. He did not find any other cause of death excepting as stated above. He saw no trauma. He did not, nor did any other witness, testify that any blood vessel was ruptured.

Dr. J. Marion Read was called as a witness by the State Compensation Insurance Fund. He never saw the decedent before or after death. To him was propounded a hypothetical question containing ten folios or more and he was asked as to what caused death. He replied that the decedent died from natural causes. The hypothetical question propounded to the witness purported to cover the life of the decedent during the six years preceding his death and to include also subsequent facts, including the result of the autopsy and the report made thereon. The question stated assumed facts, which included the following: For several years prior to his death the decedent was a laundry deliveryman. As such his work was of an ordinary nature in all respects; his hours were ordinary hours and his route and equipment were ordinarily good. His deliveries were made by the use of a truck which had to be cranked to start it, but the truck was in ordinary repair and was ordinarily easy to crank. On the morning of decedent's death he was seen to move the truck and it may be assumed he had cranked it. The question recited the medical examinations hereinabove mentioned and also the fact that on the day before his death the decedent had two heart attacks. Addressing himself to the assumed facts stated in the hypothetical question the witness was of the opinion that death was due to coronary thrombosis. He testified that the attacks on the two preceding days tended to support that conclusion. That the decedent's death was not caused by the cranking of the automobile, he said, was evidenced by the fact that for

twenty minutes, or more, immediately after the cranking no evidence of a collapse appeared. If the cranking of the truck had been the cause, the decedent would have collapsed immediately. Moreover, on other occasions when the decedent cranked the truck, he suffered no attack. As there was no evidence that the heart showed trauma, the time and manner of the collapse were such as to lead the witness to the belief that the attack on Monday morning was the same as the attacks on Saturday and Sunday with the exception that the latter was fatal. In this connection the witness was of the opinion that the attack on Monday morning was no more the outcome of the activities of the decedent than were the two attacks on Sunday. The general rule of law governing such cases is concisely stated by the Supreme Court of West Virginia in the case entitled *Martin* v. *State Compensation Commr.*, 107 W. Va. 583 [149 S. E. 824, at page 826]: "There is a great mass of decisions involving claims where the applicant was afflicted with heart disease at the time of the alleged injury. These decisions are discussed and listed in the textbooks, and in annotations to decided cases. See Bradbury Work. Com. (3d ed.), p. 378, par. 61, title 'Heart Disease'; annotation to *Carroll* v. *Industrial Commission,* 69 Colo. 473 [195 Pac. 1097, 19 A. L. R. 107]. Without analyzing and discussing those decisions (which would unduly incumber our Reports), it may be deduced therefrom that compensation will not be awarded where the employee has chronic heart trouble which has reached such a stage that death is liable to ensue at any time, from any exertion, and death came while he was doing the ordinary work of his employment." In a long line of cases in this state those principles have been applied and followed. Two of those cases are *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17], and *Nielson* v. *Industrial Acc. Com.*, 125 Cal. App. 210 [13 Pac. (2d) 517]. The first case, on page 594 of 186 Cal., shows under what circumstances relief cannot be had; and the second case clearly indicates what change in the facts will justify granting relief. This petitioner cites and relies on *Buckley* v. *Roche,* 214 Cal. 241 [4 Pac. (2d) 929], as supporting her claim. We think it does not do so. It involved the construction of a pension statute. The foundation for a claim to a pension as a police officer may be predicated on the sole

fact that the injury relied on arose "while in the performance of his duties". (San Francisco Charter, sec. 4, chap. X, art. VIII.) On the other hand, the claim of a workman must be based on an injury "arising out of and in the course of the employment". (Workmen's Compensation, Insurance and Safety Act, sec. 6 [a], as amended by Stats. 1929, p. 430.) The two statutes are materially different. Moreover they were intended to be different. "The act (Workmen's Compensation) is not a substitute for disability or old age pensions. It cannot be strained to include that kind of relief." (*Madden's Case*, 222 Mass. 487 [111 N. E. 379, 382, L. R. A. 1916D, 1000].)

Making a different attack the petitioner asserts that Dr. Tiffany performed the autopsy and that Dr. Read was not present and never saw the heart of the decedent and therefore there is no conflict in the evidence. (*Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142].) With this assertion we do not agree. When petitioner's application was submitted to the defendant Commission there were two distinct theories presented. It was her contention, as shown by her expert, Dr. Tiffany, that the decedent's death was caused by hypertrophy of the heart and valvular lesion. That expert testified to all that he saw when he performed the operation; and he also testified to his conclusions based on the knowledge so acquired and the history of the case. On the other hand, it was the contention of the insurance carrier, as shown by its expert Dr. Read, that Dr. Tiffany was mistaken in his theory as shown above, and that death was caused by coronary thrombosis which was not referable to the employment of the decedent, but was a natural cause. The conclusions of the latter witness were based on the facts testified to by Dr. Tiffany and on an extended history of the case. It thus appears that the two experts took into consideration the same facts, but reached different conclusions.

Considerable is said in the briefs regarding the liability of the employer for aggravation of a pre-existing disease. Speaking generally, there is no question about such a liability. It is statutory. (Sec. 3, subd. 4, as amended by Stats. 1919, p. 910, sec. 1.) However, that claim when asserted must be supported by proof. In a certain sense every day's work consumes so much reserve force of the

heart of every laborer. But such fact standing alone will not support an award of compensation chargeable against industry. In the case under consideration both experts testified that every exertion during the entire day of twenty-four hours tends to consume the reserve force of a damaged heart, and in that sense, is an injury to it—is an aggravation of it. But not every such exertion in the line of the employee's duties will constitute a legal claim under the statutes providing for workmen's compensation. (*Martin* v. *State Compensation Commr., supra.*) So, in the instant case the petitioner's proof did not bring her within the limits of the statute concerning aggravation of a pre-existing disease.

The award is affirmed.

Nourse, P. J., and Spence, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 8, 1933.