[S. F. No. 14950. In Bank.—July 5, 1934.]

ALASKA PACKERS ASSOCIATION, Petitioner, v. IN-
DUSTRIAL ACCIDENT COMMISSION and JUAN
PALMA, Respondents.

Pillsbury, Madison & Sutro, F. D. Madison and Francis Gill for Petitioner.

Arthur I. Townsend, Everett A. Corten and Elmer P. Delany for Respondents.

THE COURT.—This is a proceeding to review an award of compensation made by the Industrial Accident Commission in favor of Juan Palma against the Alaska Packers Association, his employer.

On May 13, 1932, Juan Palma, a nonresident alien, entered into a contract of employment on board the steamer "Chirikof" in the harbor of San Francisco, with the Quong Ham Wah Co., agent for the petitioner, the Alaska Packers Association, by which he agreed to work for the petitioner during the salmon canning season at or about Kvichak in the territory of Alaska. The Alaska Packers Association agreed to transport Palma to Alaska and back to San Francisco at the close of the season. He was to be paid on his return to San Francisco, at a monthly rate, less any advances made. Section 11 of the contract, signed by Palma, and some fifty other workers, on board the "Chirikof," reads as follows:

"Section 11. As the only labor contemplated by this contract is to be performed in the Territory of Alaska, and as the Contractor has elected to be bound by the provisions

of the Alaska Workmen's Compensation Act, Chapter 25 of the laws of Alaska, 1929, pages 46 to 49 and amendments thereto, the parties of the second part hereby agree, as an incident of this contract of employment, to accept and be bound by the provisions of the said Workmen's Compensation Act of Alaska for any and all injuries arising out of and in the course of their employment, and further agree to accept as their exclusive remedy for any and all industrial injuries, the provisions of the said Workmen's Compensation Act of Alaska.''

Palma was treated on two occasions and was finally operated on in petitioner's hospital in Kvichak, having left work on June 3, 1932. He presented no claim for compensation in Alaska, but received his regular wages until August 11th. Upon his return to San Francisco, and on August 18, 1932, he made application to the California Industrial Accident Commission for an adjustment of his claim on the ground that his disability had resulted from an injury arising out of and in the course of the employment and had been caused by an empty box falling against his stomach.

Petitioner filed an answer to the application, admitting the employment, but denying that the applicant sustained an injury arising out of the employment and setting up that both the applicant and the petitioner were subject, at the time of the alleged injury, to the Workmen's Compensation Act of Alaska, chapter 98 of the Session Laws of Alaska, 1923, and chapter 25 of the Session Laws of Alaska, 1929, and acts amendatory thereof; and further, that petitioner was qualified to do business in Alaska, had filed in the office of the clerk of the District Court, Third Judicial Division, at Valdez, Alaska, its articles of incorporation and other papers qualifying it to do business in Alaska, and that it maintained, as required by law, its resident agent for the purpose of receiving service of papers in the third judicial division; that the District Court in that division was the only proper tribunal for the settlement of Palma's claim by reason of the Alaska act and the contract of employment, section 11 of which is set out above; and that the California Commission was without jurisdiction. These allegations are supported by an affidavit of the United States commissioner of the Kaknek-Kvichak precinct that neither the applicant

nor the Alaska Packers Association had filed a notice of rejection of the terms of the Alaska Workmen's Compensation Act in accordance with the provisions thereof and that on May 26, 1932, and ever since the Alaska Packers Association and all their employees had been subject thereto, and by an affidavit of the clerk of the District Court of the Third Judicial Division that the Alaska Packers Association had qualified to do business in the territory of Alaska by filing the necessary papers and maintained a resident agent for service in that division.

While the petitioner questions the sufficiency of the evidence to support the finding that the injury arose out of the employment, the main attack is directed toward the jurisdiction of the Industrial Accident Commission to entertain this proceeding for compensation under the California Workmen's Compensation Act. The respondent commission cites in support of its claim of jurisdiction sections 27 (a) and 58 of the California act, which provide as follows:

Section 27 (a). "No contract, rule or regulation shall exempt the employer from liability for the compensation fixed by this act. . . . "

Section 58. "The commission shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act."

Petitioner urges that this injury is within the exclusive territorial jurisdiction of Alaska and hence not within the territorial jurisdiction of California; and, second, that section 58 of the California act, above quoted, is unconstitutional for the reason that it denies full faith and credit to the Alaska statute, trespasses upon the exclusive power of Congress to make laws regulating the employer-employee relationship in the territory of Alaska, and constitutes a denial of due process and equal protection of the law under amendment XIV of the federal Constitution, inasmuch as it is an unreasonable regulation of the right to make private contracts of employment and an attempt to regulate a relation or status existing beyond the territorial limits of the state. The problem can be narrowed to some extent.

In the first place, the California commission cannot apply and administer the Alaska act. Section 25 of chapter 25 of the Session Laws of Alaska, 1929, provides 'that ''No action for the recovery of compensation hereunder shall be brought in any court holden outside of the judicial division in which the injury occurred, out of which the right to compensation arises, except in cases where service cannot be had on the employer in the judicial division where the injury occurred. No action for the recovery of compensation hereunder shall in any case be brought outside of the Territory of Alaska, except in cases where it is not possible to obtain service of summons upon the defendant in said Territory, and in all such cases the plaintiff must plead and prove his inability to obtain service of summons upon the defendant within the Territory of Alaska.'' In the second place, if California has not attempted an extraterritorial regulation of the incidents of employment, petitioner's argument relative to invasion of the exclusive jurisdiction of the federal government to regulate employment in Alaska must fail; nor is there any denial of due process and equal protection by reason of extraterritoriality.

It is fundamental and has been well said that: ''In general our law is territorial and not personal. This does not mean that rights and duties can be enforced only in the territory of the jurisdiction which created them; it does mean that such law does not ordinarily purport to create rights and impose duties by reason of acts, to which legal consequences may be annexed, occurring beyond the geographical confines of its territory.'' (See Angell, Recovery Under Workmen's Compensation Acts for Injury Abroad, 31 Harv. L. Rev. 619.) However, the California act does purport to establish compensation for injuries received abroad in a certain class of cases where (the other general requirements of compensation of course being present): (1) the injured employee is a resident of this state at the time of injury, and (2) the contract of hire was made in this state. The first condition has been nullified by the decision in *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 Pac. 1021, 12 A. L. R. 1190] (*certiorari* denied by the United States Supreme Court, 255 U. S. 445 [41 Sup. Ct. 373, 65 L. Ed. 723]), which held that the federal Constitution extended the benefits of the act to nonresidents also.

The second condition remains and squarely presents the question whether the making of the contract of employment in this state is a satisfactory and sufficient basis for the creation by the California legislature of the right of compensation for an injury received beyond its borders, even though the services contracted for were to be performed wholly outside the state, a consideration apparently not urged upon the court in the Quong Ham Wah Co. case.

Where the duty to pay compensation is contractual, as under the optional acts, the rights of the injured party, wherever the injury is received, may, according to recognized principles, be controlled by the law of the place of contract. ■ However, the California act is compulsory and it is now settled that the right to, and the liability for, compensation established by it are not founded upon contract but are statutory rights and duties arising from the employer-employee relationship and are imposed by the law as incidents to that status. (*North Alaska Salmon Co.* v. *Pillsbury,* 174 Cal. 1 [162 Pac. 93, L. R. A. 1917E, 642]; *Quong Ham Wah Co.* v. *Industrial Acc. Com., supra,* 31 Harv. L. Rev. 619.) Consequently a decision upholding the so-called extraterritorial effect of our act cannot be placed upon this ground.

In *Post* v. *Burger & Gohlke,* 216 N. Y. 544 [111 N. E. 351, Ann. Cas. 1916B, 158], this extraterritorial effect was given the New York act on the basis of the fiction of a "constructive contract", on the theory that the legislature had the power "to compel a contract between employer and employee that is extraterritorial in effect". This case is cited in *Quong Ham Wah Co.* v. *Industrial Acc. Com., supra,* which described the liability as not the mere regulation of a status or imposition of a tort liability but as *"quasi ex contractu"*, and sustained an award under section 58 of the act for an injury received outside the state on the ground that the statute assumed to extend its effect "only to those cases where the contract of hire was made in this state", and that consequently it is "not an attempt to create an obligation merely as an incident to a status but is, in form and substance, a genuine regulation of contracts subject to the sovereignty of the state". The court further said: "The contract creates a relationship under the sanction of the law and the same law attaches as an incident thereto an

obligation to compensate for injuries sustained abroad amounting to a sort of compulsory insurance. The legislature may lawfully impose that right and duty upon those operating under a contract subject to the legislative power, and no principle of law is defeated by attaching to such contracts the same duties and rights as incidents to acts abroad that are lawfully imposed as incidents to the same acts occurring within the geographical limits of the state.''

While there is much apparent conflict on this question in the various jurisdictions of the country, most of the cases turn upon the construction of the particular statute involved and the legislative intent as shown by its provisions. Though not controlling, in view of the legislature's express declaration that our statute shall apply to injuries received abroad where the contract of hire is made within the state, these cases are instructive of the social policy behind such declaration and of the principles upon which it may be sustained. Where the statute is elective the contractual theory has been applied and, where the statute is compulsory, as well as in some cases where the elective feature of the optional act has not been particularly relied upon, the basis of the power to impose such an incident upon the employer-employee relationship seems to be jurisdiction of that status at the time of its creation. Although there are many cases holding that particular compensation statutes were not intended to cover injuries received abroad, none has been cited or discovered which holds an express legislative declaration of that policy to be ineffective. (See note, 3 A. L. R. 1351 [collecting and discussing cases] and supplemental notes in 18 A. L. R. 292; 28 A. L. R. 1345; 35 A. L. R. 1414; 45 A. L. R. 1234; 59 A. L. R. 735; 82 A. L. R. 709; also 31 Harv. L. Rev. 619, *supra*, and 37 Harv. L. Rev. 375.) We are of the opinion that the creation of the status under the laws of this state is a sufficient jurisdictional basis for the regulation of that relationship within this state and the creation of incidents thereto which will be recognized within this state, even though the relation was entered into for purposes connected solely with the rendition of services in another state. If this were not so there could be no compensation for an injury arising out of and in course of the employment but occurring before the jurisdiction in which the services were to be performed had been entered, or where

that jurisdiction had no compensation statute. This would seriously interfere with the policy of the act, which is to charge to the industry those losses which it should rightfully bear, and to provide for the employee injured in the advancement of the interests of that industry, a certain and prompt recovery commensurate with his loss and, in so doing, lessen the burden of society to care for those whom industry has deprived, either temporarily or permanently, of the ability to care for themselves. ██ Having a social interest in the existence within its borders of the employer-employee relationship, the state may, under its police power, impose reasonable regulations upon its creation in the state. That the imposition of such conditions is in line with the present-day policy in compensation legislation cannot be doubted. Similar provisions have been upheld and enforced in *Falvey* v. *Sprague Meter Co.,* 111 Conn. 693 [151 Atl. 182], *Roberts* v. *I. X. L. Glass Corp.,* 259 Mich. 644 [244 N. W. 188] , *Pederzoli's Case,* 269 Mass. 550 [169 N. E. 427] , *McLaughlin's Case,* 274 Mass. 217 [174 N. E. 338] , and *Migue's Case,* 281 Mass. 373 [183 N. E. 847], even though the services were to be performed entirely in another state. It is true that these acts have elective features, but in the Massachusetts cases the decisions were not placed upon that ground but upon the legislative intent to cover such situations, the constitutionality of the provision not being discussed although the question was raised. We consider this a reasonable regulation having a direct relation to the protection of the public, especially under the facts of the present case, since the employment was to both commence and terminate in this state. Palma was, under the contract of employment, to be transported from San Francisco to Alaska and back, and was to be paid off on his return to San Francisco.

Additional points made by the petitioner are that on conflict of laws principles, the Alaska act should govern the determination of Palma's claim, and that the failure of the commission to recognize the Alaska act, when pleaded as a defense to this application, was a denial of the full faith and credit to which it was entitled under the federal Constitution.

It should, first, be observed that in *Quong Ham Wah Co.* v. *Industrial Acc. Com., supra,* the court was primarily con-

cerned in determining the validity of section 58 with reference to article IV, section 2, of the federal Constitution, and the first clause of section 58, which extended the benefits of the act in connection with injuries abroad only to residents of this state. The consideration of the nature of the "extraterritorial" effect to be given the act and the language quoted above was in answer to the argument that the obligation placed on the employer was one which could only be imposed by the law of the place of injury or of the place of the servant's domicile, and hence that the qualification of residence was a jurisdictional limitation and not discriminatory. It does not appear that the law of the place of injury was set up as a defense or that the questions thus presented were urged upon the court in that case.

■ This phase of the problem is essentially one in conflict of laws. The jurisdiction of both Alaska and California may be sustained, the one upon the basis of control of the status at the time of the injury, the other upon the basis of control at its inception. (See American Law Institute, Restatement of Conflict of Laws, Proposed Final Draft No. 4, secs. 434 and 436.) We have been referred to many decisions of state courts, principally later New York decisions modifying *Post* v. *Burger & Gohlke, supra,* which apply the rule that where the contract is for services to be performed exclusively abroad and the injury is received there, the law of the place of injury will be applied. (*Cameron* v. *Ellis Const. Co.,* 252 N. Y. 394 [169 N. E. 622]. See, also, *MacKesson-Fuller-Morrison Co.* v. *Industrial Com.,* 212 Wis. 507 [250 N. W. 396], and discussion of cases in the notes above cited). But for the most part these cases, as already indicated, deal with the construction of various acts as intending or not intending a recovery of compensation for injury received abroad where the contract, made in the state of the forum, contemplated an exclusively foreign employment. In *American Liability Ins. Co.* v. *McCaffrey,* 37 Fed. (2d) 870, the court applied the rule that a contract made in one state, to be wholly performed in another, is governed by the law of the state where the performance is to be held. In *Ford, Bacon & Davis* v. *Volentine,* 64 Fed. (2d) 800, which did not decide the question, the problem is stated with regard to optional laws: "Under elective laws the obligation

to make compensation exists because the parties to the employment have expressly or impliedly agreed to it, surrendering their rights to other adjustment for injuries. Where, as in this case, the entire performance of the employment is to be in another state, a serious question may exist whether the parties did not really contract with reference to the law of that other state, which ought accordingly to enter into the contract rather than the law of the place of its making. . . . Many courts, however, disregarding the place where the services are to be rendered, have considered that an elective compensation act of the place of contract follows the employee wherever he renders service under the contract, and is to be enforced in suits for injuries in other states unless that compensation act itself provides against its applying beyond its own state, or unless the public policy of the forum or a lack of necessary machinery prevents its enforcement.''

Our act being compulsory, neither line of reasoning can be applied. The parties cannot be said to have contracted with reference to the law of either jurisdiction other than as the laws of this state enter into and are a part of every contract made here, and, as by going into another jurisdiction to perform services under a contract of hire, they submit themselves to its laws. The attempted selection of the Alaska act as the governing law in section 11 of the contract is not available to the petitioner. A contract attempting to avoid the liability imposed by the California act is invalid. (Sec. 27 [a] of the Workmen's Compensation, Insurance and Safety Act of 1917; *San Francisco-Oakland Terminal Rys.* v. *Industrial Acc. Com.,* 180 Cal. 121, 127 [179 Pac. 386]; *Hines* v. *Industrial Acc. Com.,* 182 Cal. 359 [188 Pac. 277].)

Petitioner cites as particularly applicable the following comment following section 434 of the Proposed Final Draft No. 3 of the Restatement of Conflict of Laws, American Law Institute: ''The case of employment through an employment agency in one state where the entire business is carried on in another state, and the applicant is merely sent to the principal office to report, is specially treated. In such a case the relation is regarded as established not by the action of the agency, but by the workman reporting for work at the principal office of the business, the transaction

at the employment office not being regarded as definitive hiring. In that case the compensation act of the state where the workman reported for duty governs liability for injuries." The Restatement on Conflict of Laws has not reached its final form. The foregoing comment on section 434 does not reflect the general rule, but rather an exception to or modification of the general rule announced or suggested for approval by the institute in section 434 of the latest Proposed Draft No. 4, published March 22, 1934, as follows:

"Compensation Under Act of State of Employment.

"A workman who enters into a contract of employment in a state in which a Workmen's Compensation Act is in force can recover compensation under the Act in that state for bodily harm arising out of and in the course of employment, although the harm was suffered in another state, unless the Act provides in specific words or is so interpreted as to apply only to bodily harm occurring within the state."

Section 58 of the California act is in accord with the foregoing proposed final draft, and, whether it be in the exact form to be finally adopted, undoubtedly it reflects the final trend of the law on the subject. If the proposed final draft should have any bearing on the present case, the general rule as suggested, and not a comment noting an exception or modification of the general rule, would be the more persuasive.

██ Furthermore, in the light of the foregoing "comment" we regard the employment agreement pursuant to which the applicant went aboard the "Chirikof" and was transported to Alaska, as "definitive". The parties both signed the contract. It apparently contained all the important conditions of the employment. The transportation and the payment of wages, which were both important incidents of the contract of hire, were not to be performed in Alaska. Moreover, whatever may be the correct rule in conflict of laws to be applied in the ordinary case of a contract of employment made in this state, to be performed exclusively in another jurisdiction, such contracts as the present one, which hire itinerant labor in large groups to be transported out of the state for seasonal work and returned to this state at the end of the season, constitute a special class of employment contracts in which the state of hiring

has an interest at least as substantial as that of the state in which the temporary and seasonal work is to be performed. The laborer injured in the course of such employment is, by the terms of his contract of hire, to be returned to that state to become a charge upon it if he cannot obtain compensation or take care of himself. To leave the applicant to his remedy in Alaska in such a case would create a great hardship. In this class of employment the employer exercises great control over the presence of the applicant in either jurisdiction. Should he stay to prosecute his claim in the jurisdiction of the injury it is quite likely that he would lose his return transportation.

We come now to the question of the recognition to be accorded the Alaska act. The United States Supreme Court has held in a case where the contract of employment was made in Vermont, the principal employment was located there and the Vermont statute was elective and clearly exclusive (i. e., precluded, without the necessity of construction, any recovery under the law of another state); that it was a denial of full faith and credit for the New Hampshire court to refuse to allow the Vermont act to be set up as a defense to an action in New Hampshire, where the employee was working temporarily at the time of his injury. (*Bradford Electric Light Co.* v. *Clapper*, 268 U. S. 145 [52 Sup. Ct. 571, 76 L. Ed. 1026, 82 A. L. R. 696].) In *Ohio* v. *Chattanooga Boiler & Tank Co.*, 289 U. S. 439 [53 Sup. Ct. 663, 77 L. Ed. 1307], it was held that it was not a denial of full faith and credit to apply the compulsory law of the state of injury where the contract, made in Tennessee, provided that the workmen should also serve in other states and the Tennessee act had been interpreted by the Tennessee courts as not precluding recovery in another state. The conclusion reached herein is not inconsistent with those cases which have left open the question of what law is applicable where the state of injury is the state where the major incidents of the employment are located although the contract is made elsewhere. Nor do we here attempt to decide that question except in the special class of cases now before us. In addition, we may add that it is not ordinarily a denial of full faith and credit to refuse to apply the law of another jurisdiction on conflicts principles. (See note 46, Harv. L.

Rev. 291.) *A fortiori* if it cannot by its own terms be administered by the forum in which it is pleaded.

 Since we have concluded it was not error for the California Industrial Accident Commission to entertain this proceeding, it becomes necessary to consider the claim that there is not sufficient evidence to sustain the findings of the commission that the injury arose out of the employment. The company doctor, who was the only one to examine the applicant before the operation, or to make a thorough examination at any time, testified that in his opinion the disability was not caused by an injury but was due to natural causes. Doctor Quinn, on the basis of whose testimony the award was made, examined the patient upon his return to San Francisco and gave his opinion, basing his conclusion "on the reports rendered by the attending physicians", that the condition was of traumatic origin. The rule invoked by petitioner is that of *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142], and *Nielsen* v. *Industrial Acc. Com.*, 125 Cal. App. 210 [13 Pac. (2d) 517], to the effect that "there was no true conflict in the evidence where that on one side consists of opinions based on facts not shown by the record to exist, while that on the other side was based upon facts actually shown to exist or rested on the testimony of physicians who had actually treated and examined the patient". In the Nielsen case the discredited evidence "rested solely in the opinions of physicians who had not treated, examined or seen the patient, but who based their opinions upon a statement of the case which in numerous particulars was not a full and complete statement".

Doctor Quinn's opinion is introduced by the following words: "Discussion of the case: Owing to this man's ignorance it is impossible to obtain any accurate idea of the condition for which he was operated upon, and it is necessary for me to base my conclusion on the reports rendered by the attending physicians." This brings the case within the rule of *McNamara* v. *Industrial Acc. Com.*, 130 Cal. App. 284, 289 [20 Pac. (2d) 53]: "The conclusions of the latter witness were based on the facts testified to by Dr. Tiffany and on an extended history of the case. It thus appears that the two experts took into consideration the same facts, but reached different conclusions."

On the second appeal of the Nielsen case it was said by this court, speaking of the Winthrop case: "There was no intent to hold, and it was not decided, that the opinion of experts who had no personal knowledge of the facts may not raise a conflict with the testimony and opinion of those whose conclusions are drawn from a personal examination of the injured employee. The opinion of experts based on hypothetical statements of the facts in the record is competent evidence. The weight of such evidence is for the commission's determination." (*Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118 [29 Pac. (2d) 852].)

The award is affirmed.

Rehearing denied.