[Civ. No. 12996. First Dist., Div. One. Mar. 18, 1946.]

LIBERTY MUTUAL INSURANCE COMPANY, Petitioner,
v. INDUSTRIAL ACCIDENT COMMISSION and
APPIO CALABRESI, Respondents.

556

Leonard, Hanna & Brophy for Petitioner.

R. C. McKellips, Edward A. Sarkisian and Fred G. Goldsworthy for Respondents.

PETERS, P. J.—Claimant Calabresi was employed by Planters Nut and Chocolate Co. from September, 1943, to January, 1945. His work consisted of lifting and emptying sacks of peanuts into bins. The sacks weighed from 115 to 125 pounds each, and were required to be raised slightly above hip level and then dumped. The employee worked six days a week and dumped about 150 sacks a day. Late in the afternoon of January 2, 1945, while lifting one of the heavier sacks in the usual routine way, he suffered a severe attack of pain which was later diagnosed as an occlu-

sion of the left coronary artery with infarction of the left ventricle of the heart. Although the employee was unaware of the fact, the medical evidence is in substantial agreement that he had a preexisting heart disease and that effort and exertion were contraindicated for a man of his age and physical condition. Prior to his employment with Planters Nut and Chocolate Co. the claimant had been employed at hard physical labor for Simmons Bed Company. Since January 2, 1945, the employee has been unable to resume work.

The employee was examined by Dr. duBray on January 11, 1945. Based on that examination, upon certain tests, and upon a history of the case, this specialist was of the opinion that the lifting operations of this employee did not accelerate the heart attack, although he admitted that excessive strain might have caused the attack. He was of the opinion, however, that the condition was not industrial in origin and that the work performed did not aggravate the preexisting condition. He gave it as his opinion that the employee suffered from angina pectoris and not from a coronary occlusion. On cross-examination he admitted that a progressive heart condition as diagnosed by him would be aggravated by hard work, and that if it could be shown that the employee had been subjected to an excessive strain it might change his diagnosis, but he was quite positive in his view that the strain here involved was not excessive, and, in his opinion, did not contribute to the collapse. He frankly admitted that there was a difference of opinion among heart specialists as to the effect of strain on a diseased heart. As put by the doctor "there is some difference of opinion as to whether effort plays any part or not, or strain."

The attending physician was Dr. Onesti, who was called in on the night of the attack. He had known the employee and had been the family physician for many years, and, prior to January 2, 1945, had no reason to believe the employee had heart trouble. He diagnosed the condition as an acute cardiac dilation, and later referred the case to Dr. Kaufman, a heart specialist. Dr. Kaufman examined the patient and made several tests subsequent to the examinations and tests made by Dr. duBray. He was of the opinion that, although the patient undoubtedly had a preexisting heart condition, the damage existing at the date of his examination was of recent origin and not a condition preceding January 2d. He based this conclusion on his interpretation of the symptoms,

and on his interpretation of the electrocardiagrams taken by him and by Dr. duBray. The changes shown by these two electrocardiagrams, which he described in detail, indicated to him that the condition was precipitated by the effort expended on January 2d. He testified that this man suffered from "a rupture of the vessel consequent upon effort." He concluded that the employee "as the result of the episode of January 2, suffered a left coronary artery occlusion with infarction of the anterior surface of the left ventricle and that it arose from and during his occupation."

Based on this evidence the commission found that on January 2, 1945, the employee "sustained injury arising out of and occurring in the course of his employment, as follows: Aggravation of a preexisting coronary vascular disease into a disabling condition . . .," and an award was made accordingly.

Petitioner seeks to have this award annulled on the theory that it is unsupported by the evidence. The contention is made that heart cases are compensable only when the evidence shows that the employee as a result of his employment was subjected to an unusual strain or exertion. It is urged that prior cases, and particularly the case of *McNamara* v. *Industrial Acc. Com.*, 130 Cal.App. 284 [20 P.2d 53], have established such a rule in this state. Great emphasis is placed on the referee's memorandum which indicates that the referee believed that the McNamara case so held, and further believed that the rule of the McNamara case had been impliedly overruled in that the commission had made numerous awards in such cases and the appellate courts had, without opinion, denied writs. This court granted the writ in this case, not because of any doubt that the award is amply supported, but in order to consider the contention that there is a conflict in the California authorities on the issue involved.

Before directly discussing the prior cases, certain fundamental principles should be restated. Under the Workmen's Compensation Act, subject to certain exceptions not here involved, compensation is awarded "Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment"; and where "the injury is proximately caused by the employment." (Lab. Code, § 3600, subds. b and c.) ▉ It is now too well settled in this state to require extended citation of authority that the employee

is entitled to compensation for disability proximately caused by industrial injury regardless of whether the employee's condition at the time of injury was average or subnormal. Thus, an aggravation of an existing infirmity where such aggravation is proximately caused by the employment is compensable, even though a normal man would not have been adversely affected. This rule applies even though it is shown that the employee would have ultimately died from such disease, if the evidence shows and the commission finds that the injury hastened or produced his death. (See many cases collected 1 Campbell, Workmen's Compensation, § 104, p. 80, particularly in f.n. 115.) Industry takes the employee as it finds him. ■■ A person suffering from a preexisting disease who is disabled by an injury proximately arising out of the employment is entitled to compensation even though a normal man would not have been adversely affected by the event.

These principles are elementary. The difficulty that sometimes arises is not in stating the principles but in applying them to particular facts. ■■ The burden of proof that the injury arose out of and in the course of the employment, and was proximately caused thereby is on the employee. ■■ Not every injury occurring during the employment is compensable. The employment must be the proximate cause of the injury. ■■ It is obvious that whether the employment proximately precipitated the collapse of a preexisting diseased heart and proximately caused it to collapse before normal progressive developments would have resulted in the collapse is a question of fact. Particularly when as here, the collapse results in disability and not death, so that autopsy reports are not available, ascertaining the true fact is a somewhat difficult problem. ■■ The burden of proving that the employment is a proximate cause is on the employee and frequently the employee is unable to sustain the burden of proving industrial causation. But the difficulty of proof is no reason to deny an award if the evidence warrants it.

■■ Obviously, the commission must depend on the reasoned opinions of attending physicians and experts in the field. The fact that experts may be divided in their opinions as to causation, or that different schools of thought exist in the medical profession, is no reason to deny liability if the commission finds on competent substantial evidence in accord with those doctors who honestly believe that the employment

hastened and precipitated the injury. We have frequently read in applications for writs before this court the divergent views of medical specialists on the effect of strain on a preexisting diseased heart. There can be no doubt but that there is a respectable school of thought that believes that strain, at least a nonunusual strain, does not adversely affect a preexisting diseased heart. Other doctors, equally qualified, honestly believe that strain adversely affects such preexisting condition. The existence of these divergent ideas is what has led the commission to render, on occasions, what appear to be divergent opinions. Under the referee system, if one referee believes those doctors who do not believe strain adversely affects the preexisting condition he will decide the case against the employee, while a referee who believes the doctors who testify that the strain involved aggravated the preexisting condition and precipitated the collapse will decide the case in favor of the employee. The commission, on occasion, has adopted the findings of referees who have, on almost identical facts and opinions, decided separate cases contrary to each other. This may be an unfortunate situation but it is not one that the courts can cure. The judges of the appellate court are not qualified nor permitted to choose between conflicting expert medical opinions. The issue involved is obviously one of fact, and until the commission adopts, or the Legislature compels, a more consistent policy the courts must affirm the commission wherever there is competent substantial evidence to support its findings.

■ Tested by these standards and rules there can be no doubt at all that the finding of industrial causation here involved is amply supported. To hold otherwise would require us to hold, as a matter of law, that Dr. duBray must be believed and Dr. Kaufman, as a matter of law, must be disbelieved. Both doctors are eminently qualified specialists in the field of internal medicine. Both personally examined and tested the employee. If their expert opinions, based on substantially the same facts, observations and tests, differ, we certainly cannot and should not attempt to resolve the conflict in favor of one litigant or the other. There being substantial, competent, credible evidence to support the award we have no power to disturb it.

There is nothing in any of the decided cases which even suggests, far less compels, a contrary conclusion. An examination of the heart disease cases previously decided demon-

strates that these cases fall within three separate and distinct categories. The first group contains those cases where the commission denied an award and the appellate courts affirmed. Typical of these cases is *McNamara* v. *Industrial Acc. Com.*, 130 Cal.App. 284 [20 P.2d 53], so heavily relied upon by petitioner. In that case the employee had a heart attack shortly after cranking his automobile, which act was a necessary incident of his employment. Shortly thereafter he died. The death occurred on a Monday. The evidence showed that on the preceding Sunday he had had two prior heart attacks at home, and on the preceding Saturday he had one, none preceded by exercise. Prior medical examinations had indicated heart trouble. The autopsy showed hypertrophy and valvular lesion. All agreed that exertion can cause a valvular lesion, but other causes exist as well. An expert called by the employee testified that the exertion of cranking the car could have aggravated the preexisting condition. Another equally competent medical expert gave it as his positive opinion that the employee died from natural causes, and that the cranking of the car did not precipitate the collapse. The commission found the death to have been nonindustrial and denied an award. The appellate court affirmed. The court in so affirming properly held that compensation will not be awarded where the employee, while performing his ordinary duties, collapses, and the evidence shows that he suffered from a chronic condition that had reached a stage that death might occur at any time. The court emphasized that the exertion here involved was normal and not abnormal. It is obvious that the case stands for the proposition that heart collapse cases are not compensable unless the employee proves industrial causation, and that if there is substantial, competent and credible evidence that the injury was nonindustrial, and the commission so finds, the award must be affirmed.

A similar case standing for exactly the same principle is *Quail* v. *Industrial Acc. Com.*, 138 Cal.App.412 [32 P.2d 402]. Here the employee died from heart trouble after being in an automobile wreck growing out of his employment. The attending physician, who also performed the autopsy, testified that the accident had nothing to do with the death. There was other evidence to the effect that the accident may have strained the heart. The commission denied an award. Obviously, the case stands at most for the proposition that there was competent evidence to sustain the action of the

commission. Also included within this group are the cases of *Lancaster* v. *Industrial Acc. Com.*, 5 Cal.App.2d 304 [42 P.2d 333], and *Singlaub* v. *Industrial Acc. Com.*, 87 Cal.App. 324 [262 P. 411]. In both cases there was competent substantial evidence that the exertion involved had no connection with the heart collapse, and the commission so found. The Singlaub case particularly emphasizes that the problem is primarily a factual one.

Typical of the second group of cases is *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 P. 17], where the Supreme Court affirmed an award of a death benefit in a heart case. In this case the employee fell from the truck he was driving and was run over and killed by that truck. There was evidence from which it could be reasonably inferred that a preexisting heart condition was so aggravated by the driving of the truck and almost having an accident that he had an attack, fell from the truck and was killed. The Supreme Court, emphasizing that the problem was factual, affirmed the award holding that although an employee may be suffering from a chronic heart condition if the collapse is precipitated or hastened by any strain or excitement of the employment the injury is compensable. The whole problem is one of proximate cause—a question of fact.

The third group of cases all involve situations where in heart cases the commission denied awards and these determinations were annulled by the appellate courts. (*Fogarty* v. *Department of Indus. Relations*, 206 Cal. 102 [173 P. 791]; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 P. 712]; *Blankenfeld* v. *Industrial Acc. Com.*, 36 Cal.App.2d 690 [98 P.2d 584]; *Mark* v. *Industrial Acc. Com.*, 29 Cal.App.2d 495 [84 P.2d 1071]; *Nielsen* v. *Industrial Acc. Com.*, 125 Cal.App. 210 [13 P.2d 517].) Also there should be included within this group cases like *Buckley* v. *Roche*, 214 Cal. 241 [4 P.2d 929], and *Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714], in which retirement boards denied pensions and the courts reversed them.

In all of these cases, at least the ones involving denial of awards by the Industrial Accident Commission, the appellate courts emphasized that in those cases there was some unusual strain or exertion to which the employee was subjected. In most of them the attending physician or autopsy surgeon testified that the unusual exertion aggravated the preexisting condition and precipitated the collapse. In most of the cases

the conflicting testimony to the effect that the exertion was not a proximate cause of the collapse was that of an expert who did not see, examine, or attend the employee. In all of these cases the courts held that the finding that the injury or death was nonindustrial was unsupported and that, as a matter of law, the death or injury was compensable. These cases stand for the proposition that where there is an unusual exertion, plus testimony of an attending physician or autopsy surgeon, that the unusual exertion was a proximate cause of the collapse, the employee or his dependents are entitled to an award, as a matter of law, even though an expert who never saw or attended the employee gives it as his opinion that the death or injury was nonindustrial. The cases do not, and in the nature of things cannot, stand for the proposition that the exertion must be unusual before it is compensable.

The astonishing thing about the state of the decided cases is that counsel have not cited a case nor have we found a California appellate or Supreme Court case where the commission has made an award of benefits in a heart case and such award has been annulled.

█ From an analysis of these cases and of the principles set forth in this opinion it must follow that where examining physicians or specialists differ as to whether the injury or death was industrial, and a competent qualified physician or specialist testifies that in his opinion the collapse was proximately caused by the employment, and the commission so finds, the award must and should be affirmed although an equally competent doctor expresses a contrary view. In such a case whether the strain is a "usual" or an "unusual" one is only one of the facts involved. If there was strain, even though the strain was a strain usual to that type of employment, the injury or death is compensable if there is competent substantial evidence to show the causal connection between that strain and the collapse. That is this case.

█ The fact that the referee may have thought he was deciding a law question contrary to the McNamara case is a false issue. Whatever his views of the law may have been (and if he believed as petitioners contend he was clearly wrong) it is not his function to declare the law but to find the facts. This he has done. The finding is supported. That is the end of the case. The fact that a referee may have misinter-

preted the McNamara case cannot invalidate an award made on a correct theory and supported by competent evidence.

The award is affirmed.

Schottky, J. pro tem., concurred.

WARD, J.—I concur in the affirmance of the award but wish to emphasize the thought expressed by the Presiding Justice that "until . . . the Legislature compels a more consistent policy the courts must affirm the commission wherever there is competent substantial evidence to support its findings." (Lab. Code, § 5953.)

Petitioner's application for a hearing by the Supreme Court was denied May 16, 1946.