ALBERT M. MENZI, as the Executor Appointed by, and as a Legatee in, the Last Will of BERENICE B. (BARKER) BALLARD, ADA KRETZ, NELLIE DONOVAN, M. ALLETTA CRUMP, THOMAS M. PIERCE, J. C. TURNER and ALICE L. PECK, Appellants, v. NELLIE E. WHITE, WILLIAM MOFFITT BALLARD and JAMES F. BALLARD, II, Heirs at Law of BERENICE B. BARKER, Also Known as BERENICE C. BALLARD, Deceased, NELLIE E. WHITE, as Administratrix of the Estate of BERENICE C. BALLARD, Deceased, HOWARD A. BARKER, BERENICE HEGLER, GRACE T. THOMPSON, JOSEPHINE SALORGNE SCULLIN, SUSAN WHITE (Now MRS. JOHN HERRON BROOKS), GRACE WHITE (Now MRS. GRACE WHITE WALKER), The Unknown Legatee or Legatees, Named or Referred to in the Last Will of BERENICE B. BARKER, Also Known as BERENICE C. BALLARD, Deceased, and, the Heirs, Grantees or Successors of Any Known or Such Unknown Legatee, Respondents, No. 41528—228 S. W. (2d) 700.

Division Two, March 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, April 10, 1950.

320

*S. Mayner Wallace, Arthur E. Kammerer, Leo Rassieur* and *Otto R. Erker* for appellants.

*Salkey & Jones, Wilbur B. Jones* and *Franklin Ferriss* for respondents.

██ ██ BARRETT, C.—This is an action to establish a will. Specifically it is an action to establish an executed duplicate as the last will and testament of Berenice Ballard Barker. The instrument was rejected by the Probate Court and a jury has found that it is not her last will and testament. The suit was instituted by Mr. Albert M. Menzi who is a beneficiary and the executor of the estate if the will is established and entitled to probate. He appeals for himself and other legatees similarly situated but he is treated here as the principal party appellant. Several other beneficiaries mentioned in the instrument are parties to the suit but the principal adversary parties respondent, as far as this appeal is concerned, are Miss Ballard's sister, Mrs. Nellie E. White, her nephews, William Moffitt Ballard and James F. Ballard, II (sons of a deceased brother), and her nieces (Mrs. White's daughters), Susan White Brooks and Grace White Walker. With or without the will Miss Ballard's estate is of the value of one million dollars. If the will is established and Mr. Menzi is the executor it is stipulated that he would be entitled to a commission in excess of $50,000.00. If the will is not established and Mrs. White continues as administratrix of the estate she could receive in excess of $50,000.00 as her commission. It thus affirmatively appears from the record that this appeal by Mr. Menzi involves a sum within this court's constitutional jurisdiction and the appellant's motion to transfer the cause to the St. Louis Court of Appeals is therefore overruled. Const. Mo., Art. V, Sec. 3.

Upon the trial of the cause and in its presentation here there was some vagueness and equivocation as to the physical documents. We have said that the action is one to establish an "executed duplicate" and the appellant says that it is an action to establish "a duplicate original of that Will." As applied to written documents, the word "original" is, of course, a relative term. 4 Wigmore, Evidence, Sec. 1232, p. 442. The instrument sought to be established here was completely and fully executed by Miss Ballard and in one sense is an "original." Physically, however, it is not the original or executed ribbon copy of the typewritten instrument. Physically it is a carbon copy and so the appellant offers an ██ executed duplicate carbon copy of a will as the last will and testament of Berenice Ballard. It was not definitely or conclusively established that the original or ribbon copy was delivered to Miss Ballard, but it is unnecessary to a decision of this appeal to attempt a settlement of that problem. In mailing the executed duplicate to the Probate Court for "filing same temporarily" the executor said: "I Hand you herewith an executed duplicate of the Last Will and Testament of Berenice B. Barker, who died in the City of St. Louis, Missouri, September 25, 1947." Subsequently, in writing to a legatee, he said: "I * * * am sending you herewith a copy of a signed duplicate of said Will. The Will was written in this office on December 14, 1933, and was fully exe-

cuted by Mrs. Barker *in duplicate,* one of which was retained in our files at her request. The duplicate possessed by her has not been found." A month later, in again writing to the legatees, he said: "In connection with my letter to you dated November 5, 1947, when I advised you that I, as Executor named in the Will * * *, because the original of said Will had not been found, which I located in my office files, * * *." But, irrespective of these circumstances and the permissible inferences from this evidence, the appellant now admits that "Deceased took one of the (executed) duplicates of her Will with her upon its execution while the other remained with her said Executor." It is also established by this record that the executed instrument retained by Miss Ballard, whether it was the executed original, an executed copy or an executed duplicate, was not found after her death.

The instruments were executed in these circumstances: In November 1932 Miss Ballard married Howard A. Barker in New York City. By December 1933 she was contemplating a divorce from Barker and stored all her personal property in a warehouse in New York City and returned to St. Louis. On December 12, 1933 she executed a revocable trust in which she transferred the bulk of her property to Mr. Menzi as trustee for herself, and, for some time, Mr. Menzi acted as her agent in handling her property and carried out the trust. The trust instrument was drawn and executed in the law office of Mr. Tom M. Pierce with whom Mr. Menzi was associated. Two days later, on December 14, 1933, Mr. Pierce drafted and Miss Ballard executed the instruments involved in this controversy. Neither the attesting witnesses, an eminent lawyer and two experienced legal secretaries, nor Mr. Menzi had any independent recollection of the precise details of the execution of the instruments. Mr. Pierce was ill and unable to testify. By way of summation, Miss Ballard gave her husband, Howard Barker, one dollar. There were fifteen specific legacies which included $100.00 to her sister, Mrs. White, a rug to Mr. Menzi, and $10,000.00 to her nephew, James F. Ballard, provided he successfully attend a certain school. Mrs. White's daughters, Susan Brooks and Grace Walker, were the residuary legatees and Mr. Menzi was the executor. Miss Ballard's marriage to Barker was annulled in California on June 11, 1934. In February, 1934 she executed a revocation of the trust and Mr. Menzi's trusteeship was concluded. She was not in Mr. Pierce's or Mr. Menzi's office again, certainly not after 1935. Fourteen years after the execution of the instruments, on September 25, 1947, Miss Ballard was found dead in her apartment in the Park Plaza Hotel in St. Louis. A search was made of her apartment and in hotels and in banks in New York City and St. Louis but the executed instrument retained by her was not found. An unexecuted typewritten copy of the instruments,

which will be referred to again, was found among some papers on a chair in her apartment.

As to the essential merits of the case Mr. Menzi contends that the trial court erred in overruling his motions for a directed verdict. It is his contention that the trial court should have directed the jury to find that the proffered instrument was the last will and testament of Berenice Ballard. It is his theory, in the instance of wills executed in duplicate and one duplicate being produced after the death of the testatrix, that there is no presumption that "the testatrix revoked her Will, by destruction of the duplicate theretofore in her ▮ possession, merely because of any failure to find the same after her death; * * *." The appellant says that the respondents rely wholly upon a presumption of revocation arising solely from a mere failure to find the decedent's executed duplicate after her death and they contend, in short, that where a will is executed in duplicate, each duplicate is the effective last will of the deceased and there should be no presumption of revocation by destruction in the instance of duplicate wills. In this connection it is also his position that the recognition and application of such presumption violates the rule established in this jurisdiction that there can be no revocation of a will by implication. Robertson v. Jones, 345 Mo. 828, 136 S. W. (2) 278. The respondents contend, on the other hand, that the fact of a will's being executed in duplicate does not alter or affect the rule and that in the case of executed duplicate wills, as in the case of a will not executed in duplicate, where the testatrix retains an executed copy and following her death it cannot be found, the rebuttable presumption is that she destroyed the instrument, intending thereby to revoke it as well as any other executed duplicate. Bates's Estate, 286 Pa. 583, 134 Atl. 513, 48 A. L. R. 294; Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389.

The inherent weakness in these two extremely stated contentions, so far as the essential merits of the cause are concerned, is that neither of these extremes precisely applies to the problem involved upon this appeal. The essential merit of the case is that a jury has found that the proffered instrument is not the last will and testament of Berenice Ballard. As delimited by the pleadings, the interrogatories, the evidence and the instructions, the jury found that Berenice Ballard revoked her will. Specifically, the jury has found that she revoked her will by destroying it. Of necessity the jury has found that she accomplished that result by destroying the executed copy retained by her with the intention and purpose of thereby revoking that copy and any other executed duplicate constituting her will but that finding does not depend alone upon a mere presumption as the appellant contends. There are circumstances other than the mere presumption.

The appellant urges, in the instance of a will executed in duplicate, that there should be no presumption of revocation merely because of a failure to find, after death, the executed duplicate theretofore in the deceased maker's possession. See and compare: annotations 48 A. L. R. 297; Ann. Cas. 1912A, p. 273. But, as we have indicated, the appeal upon its essential merits—whether the appellant is entitled to a directed verdict, is not determinable upon the existence or nonexistence of the presumption and the arguments ignore that fact. Every case upon which the appellant relies recognizes the presumption and the executed duplicates in those cases were admitted to probate as the last wills of the decedents because the circumstances, as they were found by the triers of the facts, rebutted the presumption that the decedents had revoked their wills by destroying them. Combs v. Howard, (Tex.) 131 S. W. (2) 206; Hendry v. Wilson, 202 Ark. 580, 151 S. W. (2) 683; In re Moramarco's Estate, (Cal.) 194 P. (2) 740; In re Walsh's Estate, 196 Mich. 42, 163 N. W. 70. The presumption attaches to one evidentiary fact (in the case of a duplicate will the fact that the executed duplicate in the possession of the testatrix could not be found after her death) "certain *procedural consequences* as to the duty of production of other evidence by the opponent." 9 Wigmore, Evidence, Sec. 2491, p. 288; Thayer, Evidence At The Common Law, p. 314; 2 Page, Wills, Sec. 873, p. 720; 68 C. J., Sec. 759, p. 992. As the appellant says, "revocation of wills by implication" is not recognized in this jurisdiction (Robertson v. Jones, supra; Mo. R. S. A., Sec. 521) and it is argued that, in effect, the application of the procedural presumption is a violation of that rule. We doubt that "revocation by implication" ever applied to anything other than a change in the domestic relation or estate of the testator after the execution of his will (68 C. J., Sec. 530, p. 824; 1 Page, Wills, Sec. 487, p. 900) but certainly, since the cause is not, of necessity, determinable upon the mere presumption, it may not be said that the "procedural consequence" is a revocation by implication.

We have described the physical instrument. In his letters to the legatees Mr. Menzi said that the instrument "was retained in our files at her request." At the time of Miss Ballard's death in 1947 no one was aware of the existence of that duplicate executed in 1934 and Mr. Menzi "had forgotten about the will" but he made a search and "located it in my office files." Miss Ballard was in California when she executed the revocation of trust in which Mr. Menzi was trustee on the 1st day of February 1934. On the 17th day of February, 1934 she sent Mr. Menzi a telegram in which she said, in part, "Since affairs have terminated as the status indicated nevertheless am legally entitled personal papers left your care having no bearing on matters handled by Mr. Pierce. These original notes etc. are my own and appreciating your past kindness am depending on you forward all of these to me regular registered mail Saturday including all

photostats." Mr. Menzi prepared a typewritten list and receipt of all the papers and delivered them to Miss Ballard's new counsel and she signed the receipt. If Mr. Menzi had this instrument or if it was in his file concerning the trusteeship he did not mention it or return it to Miss Ballard. On the 1st day of February, 1934, in response to a telegram and a letter, she wrote to Mr. Pierce and said: "I concur in your suggestion that we immediately terminate present relationship of Attorney and Client. I request that you forward at once by registered mail, * * * all papers, contracts, trusts, and correspondence of whatsoever nature, pertaining to my affairs, now in your possession." In response, Mr. Pierce sent this telegram: "Your letter of February first received. Will send you papers you ask by express COD Monday and bid you an affectionate goodbye forever and ever amen etcetera." If Mr. Pierce complied with the letter and the telegram he did not include the proffered instrument. It is not necessary to indicate all the permissible inferences from these circumstances. One reasonable inference is that Miss Ballard may not have known, after twelve years, that the instrument was in existence. Compare: Managle v. Parker, 75 N. H. 139, 71 Atl. 637; In re Walsh's Estate, supra.

In the proffered instrument, executed in 1934, Miss Ballard gave her nephew, James F. Ballard, II, $10,000.00 upon condition that he successfully attend a certain college. By 1945 he was in the United States Navy in India and Miss Ballard was very much interested in his welfare. Without detailing all the facts, it is plain that he came to be one of the principal objects of her affection. When he came home he was her guest at the Park Plaza. She obtained employment for him and sent him money. In January 1946, in discussing a will, she told him that "she did not have an executor and she was considering— she mentioned three people at that time, Mr. Louis Walker, Mr. William Moffitt Ballard and myself." She told one of the appellant's witnesses that "while she was trying to bring him up to the place where he could be the executor of her will, she thought it was putting too much on young shoulders." She also appears to have discovered that he could not qualify as the executor of her will as long as he lived in Mississippi or New York. Several of the respondents' witnesses gave evidence from which it was a fair inference that by 1946 Miss Ballard said and considered that she did not have a will and was contemplating the execution of one.

An unexecuted carbon copy of the proffered instrument was found in Miss Ballard's apartment. Opposite items eight, nine, ten, twelve (a rug to Mr. Pierce), thirteen (a rug to Mr. Menzi), sixteen, seventeen and nineteen, which was the residuary clause, she had written "Veto—4-5-'45." On the last page she had written "To my nephew—Jas. F. Ballard—now in U. S. Naval Services in India— $27,000.00 in his own right—to the Sons, "Billy" of Wm. Moffitt

Ballard—in his own right—at the age of 25 yrs—$15,000.00 B. C. Ballard 4-5-'45.'' She had not ''vetoed'' item twenty appointing Mr. Menzi executor. Neither had she ''vetoed'' several specific legacies to people who were then dead. The appellant admits that she was contemplating important, material changes in her will. The appellant produced several witnesses who testified that Miss Ballard had told them, even a few days before her death, that she had a will but that she was going to ''change'' it. But, the fact that she was considering several material changes in any will she may have had is a corroborative circumstance of the inference that she destroyed the will in her possession with the intention of revoking it. In re Field's Will, 178 N. Y. S. 778; Blalock v. Riddick, 186 Va. 284, 42 S. E. (2) 292.

It is not necessary to review the evidence in detail and indicate all the permissible inferences, those favorable to the appellant's view as well as those favorable to the respondents' view. There was no such unequivocal act as an actual ''cancellation'' of the executed duplicate by the testatrix as was the case in In re Holmberg, 400 Ill. 366, 81 N. E. (2) 188; 1 Page, Wills, Sec. 437, p. 788. But neither do we have a judgment based upon the mere presumption of revocation by destruction arising solely from an unexplained failure to find an executed duplicate after the death of the testatrix. Bates's Estate, 286 Pa. 583, 134 Atl. 513, 48 A. L. R. 294. Initially both executed instruments may have been Miss Ballard's last will (Odenwaelder v. Schorr, 8 Mo. A. 458) but the jury's finding that the proffered instrument was not her last will at the time of her death, because she had destroyed the executed duplicate retained by her with the intention of revoking it and any other executed duplicate, is a reasonable permissible inference from all the facts and circumstances, as the evidence set forth illustrates, and does not rest upon the mere presumption. In re Lawrence, 138 N. J. E. 134, 47 Atl. (2) 322; Blalock v. Riddick, supra; McClellan v. Owens, 335 Mo. 884, 74 S. W. (2) 570; Combs v. Howard, (Tex.) 131 S. W. (2), 1. c. 210, 213; Managle v. Parker, supra. It follows, of course, that the appellant was not entitled to a directed verdict.

 The appellant contends, however, if he is not entitled to a directed verdict, that he is entitled to a new trial because the trial court prejudicially erred in instructing the jury. In submitting the issues to the jury the court gave instructions five, six and seven, among others, at the behest of the respondents. As the appellant says, these instructions ''submitted to the jury, for their consideration, the alleged presumption of revocation,'' and it is his contention that ''merely the evidence *pro* and *con* the fact-issue of revocation should have been left to the jury by the instructions,'' and that it was prejudicially erroneous to submit and instruct the jury upon the presumption. Several cases have criticized the submission of pro-

cedural presumptions in instructions. Dove v. A. T. & S. F. Ry. Co., 349 Mo. 798, 163 S. W. (2) 548; Lampe v. Franklin American Tr. Co., 339 Mo. 361, 96 S. W. (2) 710. The appellant, however, is in no position to complain and it is not necessary to say whether these instructions were erroneous because, at the appellant's behest, the court also gave Instruction 3, as follows:

"Revocation of a Will, as used in these Instructions, means a destruction of her will, by the deceased, with the intention by her, at the time, that such instrument should no longer thereafter be her will.

"A presumption or an inference of the law, in any case, that a deceased has revoked her Will, is a presumption or an inference that the law itself draws in the absence of evidence to the contrary; but any such presumption or inference disappears and has no effect when evidence sufficient to overcome any such presumption is offered."

The appellant, having instructed upon the same subject in a manner favorable to him, may not now complain of the respondents' instructions on the same subject. Munday v. Knox, 321 Mo. 168, 182-185, 9, S. W. (2) 960, 966. In that case, a will contest, the plaintiff gave two instructions on fiduciary relationship and being a beneficiary and said, "then the law presumes that said purported will is the product of undue influence" and the burden was upon the beneficiary to overcome the presumption by the preponderance of the evidence. The defendant gave an instruction upon the ▇ same subject favorably to his views and it was held that he was therefore in no position to complain of the plaintiff's instructions. See also Hamilton v. Crowe, 175 Mo., l. c. 648, 75 S. W., l. c. 393. The appellant now says that he was compelled, by the court's giving instructions five, six and seven, to give instruction three in an effort to make the best of a situation over which he had no control and that his instruction was only an attempt to minimize the prejudice of the other instructions. As to that the record only recites that "Instructions numbered two, three and four are given at the request of and on behalf of the plaintiffs." And the cases upon which he relies do not support his claim that instruction three does not cure the error, or more precisely, prevent his raising the question, of the propriety of respondents' instructions. In State ex rel. v. Ellison, 268 Mo. 239, 258, 187 S. W. 23, the court specifically said, of the appellant's supposed curative instruction, "That instruction did not mention the presumption of innocence.". In Everly v. Everly, 297 Mo. 196, 209, 249 S. W. 88, a suit to set aside a will, an erroneous instruction was given on behalf of the defendant on the subject of unnatural disposition of property. The defendant claimed that a plaintiff's instruction on the jury's right to consider "the will itself and all its provisions" precluded objection to his erroneous instruc-

tion. But the court said, l. c. 210, "That general statement allows the jury to do what they naturally would do without an instruction. It does not correct the specific direction that it made no difference what was the disposition of the property. The jury were allowed to consider all the will but were admonished that they were not to consider that feature of it. The error in giving Instruction 2-D was not cured."

The appellant also contends that he is entitled to a new trial upon the assignment that "The advocacy of the three attorneys for the respondents was unduly emphasized to the prejudice of the appellants by said attorneys testifying, as witnesses for their said clients, in circumstances not within the exceptions enunciated by this court. Supreme Court Rule 4.19." A great deal of that testimony, how counsel "looked up the law," what the cases held and what they advised their clients and others, would appear to be irrelevant, indeed, but not so prejudicially erroneous as to require a new trial. "Our rule, (Supreme Court Rule 4.19), is intended to discourage, but does not completely forbid, an attorney from testifying in a case which he actively assists in trying. * * * It would have been well for the attorney to have left the conduct of the trial to other counsel, but our rule does not exclude his testimony." Burgdorf v. Keeven, 351 Mo. 1003, 1010-1011, 174 S. W. (2) 816, 819. As to many matters the testimony of counsel was material and essential and the appellant does not contend otherwise and it was not prejudicially erroneous for them to testify.

Since, as we have found, the appellant is not entitled to a directed verdict or to a new trial the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.