## WOODWARD v. J. J. GRIER CO. et al.

### No. 22030.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Fred B. Whalen, James R. O'Connor, St. Louis, for appellants.

Paul H. Koenig, Thomas L. Sullivan, St. Louis, for respondent.

CAVE, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County, reversing an award of the Industrial Commission. This is the second appeal in this case, see Woodward v. J. J. Grier Co., Mo. App., 252 S.W.2d 844. In that opinion we remanded the cause for the reason that the Referee had not made findings of fact on the one controverted fact issue, viz.: whether the claimant had signed a certain written contract at the time of employment. The cause was re-referred to the Referee, and without taking further evidence he

found, among other things, that the employee *had not* signed the contract, and awarded compensation in the sum of $1,200. An application was filed for review before the Industrial Commission which, after considering the whole record, found that the employee *had signed* the contract and denied compensation for reasons noted later. The employee appealed to the Circuit Court of Jackson County. That court found that the Commission "acted in excess of its powers" and ordered the Commission to affirm the award of the Referee. From that judgment an appeal was perfected to this court.

There is no dispute that the contract of hire was made in Kansas City, Missouri; that the employer and employee were both operating under the Missouri Workmen's Compensation Act, Section 287.010 et seq. RSMo 1949, V.A.M.S.; that the employee suffered an accident arising out of and in the course of his employment in the State of Wyoming; and that the rate of compensation allowed by the Referee is correct if the employee is entitled to maintain his claim in Missouri and under our Compensation Act.

There are two questions to be decided: (1) is the finding of the Commission that the employee signed the controversial contract supported by competent and substantial evidence upon the whole record? Section 22, Article V, V.A.M.S. Const., Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136; and (2) if he did so sign, do the provisions thereof deprive the Missouri Commission of jurisdiction of the claim in view of the fact that the injuries occurred in the State of Wyoming?

We will consider first the question of the employee's signature. The first hearing before the Referee was on November 17, 1950, and the cause was continued until February 27, 1951, at which time he heard further evidence. The employer offered, and the Referee admitted in evidence, nine exhibits. The only ones in controversy are Exhibits 1, 2 and 9. Exhibit 1 is asserted to be a copy or duplicate of Exhibit 9, the controversial contract, and both bear the alleged signature of the employee. Exhibit 2 is designated as "Employee's Contract and Withholding Exemption Certificate". It is a printed form with filled-in information concerning the employee, such as his address, members of his family, where he is to work, the amount to be paid him per month and authority for the withholding of taxes. It also bears his alleged signature. Exhibits 3, 4 and 5 bore the acknowledged signature of employee, and Exhibits 6, 7 and 8 are X-rays of his injuries and are not of interest on this appeal.

At the first hearing, Exhibit 1 was presented to the employee while he was testifying and he was asked if it bore his signature. He denied that he had signed it. However, he admitted that on June 8, 1950, he went to the employer's office in Kansas City and asked some man there in the office if they were "hiring anybody"; that he was employed; that the employer agreed to pay him $75.00 for the first month, $100 for subsequent months, and in addition was to furnish him board and room; and that he was given railroad transportation to a job in Wyoming. He was asked, "Q. When you were in their office, did you sign any papers? A. The only papers I signed was paper to go to work, says 'I hereby authorize this man to go to work'". On cross examination he was asked,

"Q. Before you were hired, they gave you some papers to look over and sign, didn't they? A. That is right. * * *

"Q. When you went in there, you did sign some papers for the Grier Company? A. I did sign this white sheet, I don't remember what sheet it was.

"Q. You did sign the white sheet? A. A little white sheet.

"Q. He is indicating four or five inches wide. A. Something like that (indicating)." Exhibits 1 and 9 are a part of the transcript and we note that they are on "white paper" and are "five inches" wide.

At the February, 1951, hearing, the employee was recalled to the stand and shown

what had been marked "Employer's Exhibit 9", which was the purported original of the contract, and he was asked,

"Q. Do you recognize the 'Wm. G. Woodward' on this particular paper? A. I recognize it. No, because we were in a hurry, *we didn't sign any papers.* * * *

"Q. Did you sign this particular form 'D' (Exhibit 9)? A. I didn't sign that one for sure. It is a good imitation.

"Q. Good imitation of your signature? A. Dog gone good imitation."

While the employee was testifying at the first hearing, he was asked to write his name four or five times on a yellow sheet of paper, which he did. This paper was marked "Employer's Exhibit 5" and introduced in evidence; he also identified his signature as endorsed on two pay checks which were marked as "Employer's Exhibits 3 and 4". At the second hearing, the employer produced as a witness a handwriting expert, who examined the acknowledged signatures of the employee as found on Exhibits 3, 4 and 5, and also examined the signature "Wm. G. Woodward" as found on Exhibits 1, 2 and 9, and testified that, in his opinion, all the signatures were made by the same person. Whereupon, the Referee admitted all nine exhibits in evidence. The employee objected to the introduction of Exhibits 1, 2 and 9, because they had not been properly identified, but this objection was overruled by the Referee and all exhibits are attached to the transcript and are before us.

At the hearing in November, 1950, the employer called its witness, F. E. Tompkins, out of order, because he lived in Kansas City and the hearing was being held in St. Louis. Tompkins testified that he was the employment agent of Grier Company with offices in Kansas City, and had been for several years; that on June 8, 1950, Woodward came to his office seeking employment and that he talked with him and did employ him; that he had filled out certain blanks in their mimeographed standard employment agreement; that there was an original and a carbon of such an agreement; that they were explained to Woodward and then he, Tompkins, signed on behalf of Grier Company, and that Woodward signed on a line designated "employee"; that he also filled in an "employee's contract and withholding exemption certificate", which gave Woodward's name, address, next of kin, the kind of job he was to have, and the compensation, which was $75 for the first month and $100 per month thereafter for continuous service. There was other information on this instrument, such as how to make claim for compensation if injured, authority to work for employer at Gillette, Wyoming, social security, etc. This instrument was printed on blue paper and identified as Employer's Exhibit 2. It bore the signature of Grier Company by "F. E. Tompkins", and also "Wm. G. Woodward". However, claimant also denied signing that paper.

Thus, in brief, the evidence before the Referee and the Commission was that the employee denied having signed Exhibits 1, 2 and 9, and Tompkins testified that employee signed Exhibits 1 and 2 in his presence, and also that employee had signed the original contract of employment (Exhibit 9), but that such exhibit was in employer's home office in Omaha, Nebraska, and was not produced at the first hearing. The record indicates that after the first hearing, it was suggested, possibly by the Referee, that the original contract (Exhibit 9) should be produced at the second hearing. This was done, but witness Tompkins was not present to identify it. However, as stated above, it was shown to the employee, who denied that he had signed it, but said the signature thereon looked very much like his. It was also exhibited to the handwriting expert who compared the employee's signature thereon with admitted signatures of the employee, and the expert gave it as his opinion that the employee had signed Exhibit 9. It is perfectly apparent that the contents of Exhibits 1 and 9 are identical.

There is some evidence which must be considered as affecting the testimony of witness Tompkins. He testified that certain blanks in the contract of employment were

filled out in duplicate on a typewriter, and that he and Woodward both signed the original and their signatures appeared on the copy as carbon signatures. When his attention was directed to the fact that his signature was written *through* the *line* for signature, and that Woodward's signature was written directly on the line, he stated that "I probably straightened the copies out when he signed it". Later he testified that the signature of Woodward on Exhibit 1 appeared to be an original and not a carbon copy.

It should also be noted that the employee first testified that the only paper he signed was one authorizing him to go to work; on cross examination he admitted that he was given some papers to look over and sign, and that he did sign "a little white sheet"; but at the second hearing, he testified, "because we were in a hurry, *we didn't sign any papers*". (Italics ours.)

It is apparent that witness Tompkins and the employee could have testified more consistently. But there is much other evidence in the record to support the finding of the Commission.

The material part of the Referee's findings on the fact issue of employee's signature appearing on Exhibits 1 and 9 is as follows: "I find that on June 8, 1950, a contract of employment was entered into between John J. Grier Company, as employer, and William G. Woodward, as employee, at Kansas City, Missouri, * * *. It is the employer's and insurer's contention that employee, William G. Woodward, executed, on June 8, 1950, the following agreement marked 'Exhibit 9'. (The contract is set out in full.) Employee denied having signed 'Exhibit 9'. 'Exhibit 1' was identified by witness Tompkins on November 17, 1950, the first day of the hearing, as a copy of an original contract (the original being marked later on February 27, 1951, as 'Exhibit 9'.) I believe that the contents of a written contract cannot be proven by a purported copy, if a forgery is claimed, when the original is available. Witness Tompkins did not identify 'Exhibit 9'. Exhibit 9' was marked and identified on Febru-

ary 27, 1951, by a handwriting expert making comparison as is provided by Sec. 490.640. * * * There was no showing that Witness Tompkins was not available on February 27, 1951, to identify 'Exhibit 9', thereby violating the best evidence rule. In view of the above and in view of employee's consistent denial of execution, I find that the employee did not sign 'Exhibit 1' or 'Exhibit 9'."

It is apparent from the Referee's finding that in arriving at the conclusion that the employee *had not* signed the contract, he took into consideration that Exhibit 1 was a "copy" of the original contract (Exhibit 9), and that the contents of a written contract cannot be proven by a "purported copy". He also took into consideration the fact that witness Tompkins did not appear at the second hearing to identify Exhibit 9 and thereby violated the "best evidence rule". Under the record in this case, we think these two considerations are not well founded. In the first place, the Referee overruled. the employee's objection to the introduction of Exhibits 1 and 9 and permitted them to be introduced. In the second place, Exhibit 1 is not, in the true sense, a "copy" of Exhibit 9. It is in fact a "duplicate" and bears the purported signatures of the respective parties. In Schroer v. Schroer, Mo.Sup., 248 S.W.2d 617, 622, the court discussed the admissibility of "duplicates" of original instruments and said: "The admission of the duplicates into evidence, without a showing of the reason for the failure to produce the original slips, was not a violation of the 'best evidence' rule. See generally Vol. IV, Wigmore on Evidence, 3d Ed., §§ 1232, 1233, pp. 442–445. The duplicates were not 'copies' of the originals, in the sense of being only secondary evidence of the originals. A duplicate is, in legal conception, 'an original instrument repeated, a document the same as another in essential particulars, differing from a copy in being valid as an original'." In 28 C.J.S., page 590, the legal meaning of a duplicate instrument is discussed and the writer says: "specifically in law, (a duplicate is) an original instrument repeated, a document the same as another

in essential particulars, differing from a copy in being valid as an original; either one of two originals, both of which are executed by the same party or parties; an original instrument reproduced; * * *. It is not technically nor really a mere copy of the original, but differs from a copy in that it has all the validity of the original." See also Menzi v. White, 360 Mo. 319, 228 S.W.2d 700, 701; Green v. Powell, Mo. App., 46 S.W.2d 915, 919.

■ We revert to the first question before us, viz.: Could the Commission have reasonably reached its finding upon consideration of all of the evidence before it, or was this result clearly contrary to the overwhelming weight of the evidence? This seems to be a case in which a decision either way would be supported by evidence. The question of the deference to be given the finding of the Referee and the finding of the Commission, when in conflict, is fully discussed by the court en banc in Michler v. Krey Packing Co., supra, and we need not elaborate on that issue. Suffice it to say the holding is that it is the award of the Commission that is reviewed by the court and not the award of the Referee; that judicial review is on the whole record, and the Referee's award, findings of fact and rulings of law are a part of the record; and the court must decide whether the finding of the *Commission* is "supported by competent and substantial evidence upon the whole record".

■ After giving effect to the factor of the Referee's finding, it is our conclusion that there is very substantial evidence to support the finding of the Commission that the employee signed the controversial contract.

■ We now discuss the question whether the Commission could find that the contract deprived it of jurisdiction of the claim. The finding of the Commission on this issue reads: "that the contract of employment between the parties to this cause provided that if and in the event the employee shall be injured in any state other than the State of Missouri by accident arising out of and in the course of his employment, the provisions of the Workmen's Compensation Act of the state where the accident occurs shall apply and not the provisions of the Missouri Workmen's Compensation Act. By virtue of the provisions of Section 287.110(2), Revised Statutes of Missouri 1949 [V.A.M.S.], therefore, the Commission is without jurisdiction in this cause; and compensation is accordingly denied."

The contract reads: "Agreement—John J. Grier Company, the employer, and William G. Woodward, employee, hereby agree that in the event said employee is injured in Missouri, by accident arising out of and in the course of his employment, the provisions of the Missouri Workmen's Compensation Act shall apply. If, and in the event the employee shall be injured in any state other than the state of Missouri by accident arising out of and in the course of his employment, the provisions of the Workmen's Compensation Act of the state where the accident occurs shall apply and not the provisions of the Missouri Workmen's Compensation Act.

"It is agreed that the above conditions are made a part of the contract of employment entered into this date between the employer and the employee in Kansas City, Jackson County, Missouri."

Section 287.110(2) provides: "This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made, and also to all injuries received outside of this state under contract of employment made in this state, *unless the contract of employment in any case shall otherwise provide."* (Italics ours.)

It has been decided many times that the Missouri Commission has authority and jurisdiction to make an award for an injury occurring outside of the state, if the contract of employment was made in this state. Johnson v. Great Lakes Pipe Line Co., 358 Mo. 445, 215 S.W.2d 460. But the only case which has been called to our attention or which we have been able to find discussing the specific question of whether a contract

of employment does "otherwise provide", is McClintock v. Skelly Oil Co., 232 Mo. App. 1204, 114 S.W.2d 181. In that opinion this court held, in effect, that an employer and an employee could contract that the Compensation Act of the state in which the accident occurred should apply, and not the Missouri Act. But we further held that the contract in that case was so indefinite, uncertain and ambiguous that it had not accomplished that purpose. In the instant case, we think the contract is clear, specific and definite; that the Compensation Act of Wyoming, where the injury occurred, must govern; and that the Missouri Commission properly found that it had no jurisdiction.

The employee cites State ex rel. Weaver v. Missouri Workmen's Compensation Commission, 339 Mo. 150, 95 S.W.2d 641. That was a mandamus proceeding seeking to compel the Missouri Commission to accept jurisdiction of a claim for injuries received in this state. The facts are rather complicated and need not be detailed. However, in discussing the question of the contract of employment, the court said, 95 S.W.2d 643: "The record does not disclose whether the contract was written or parol, neither does it definitely appear that there was no express agreement between the parties on the subject, but since the strong inference is to the effect that there was no express understanding that the Missouri Act should not apply, we adopt that inference as a fact for the determination of this case only." Thus the court was not deciding the specific question before us.

Employee also cites Alaska Packers' Ass'n v. Industrial Acc. Comm. of Cal., 1 Cal.2d 250, 34 P.2d 716; Id., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044. The facts in that case are very similar to the facts in the instant case. The employee was hired in California for work in Alaska; the written contract of employment provided that the employer had elected to be bound by the Alaska Compensation law and that the parties to the contract should be bound by the Alaska law; the California Compensation Act provided that its Commission should have jurisdiction of all injuries outside of the state if the contract of hire was made in California; and the employee was hurt in Alaska and returned to California and filed claim under the California Act. While the facts are quite similar, the *statute of California* is just the reverse of the Missouri statute on the right of the parties to contract relative to the applicable law. The California statute provides: "No contract, rule or regulation shall exempt the employer from liability for the compensation fixed by this act * * *." St.1917 Cal. p. 855, § 27(a), as amended by St.1931 Cal. p. 1950. The principal question decided was whether this statute was constitutional, and it was held that it was. At page 522, of 55 S.Ct., the court said: "Nor did the state of California exceed its constitutional power by prohibiting any stipulation exempting the employer from liability for the compensation prescribed by the California statute. Legislation otherwise within the scope of acknowledged state power, not unreasonably or arbitrarily exercised, cannot be condemned because it curtails the power of the individual to contract."

The constitutionality of our statute is not called in question and much of the discussion in the Alaska Packers case is not germane to the issue before us.

From what we have said, it follows that the trial court erred in setting aside the award of the Commission. That order is reversed and the cause remanded with directions to the trial court to affirm the findings and award of the Commission.

All concur.