Raymond S. POWERS, Eula R. Creswell, James A. McCullough, Margaret Siress, Bennett R. Wood, M.D., Mrs. Edward Grace, Eugene Downes, Augusta Landweh and Lorenz H. Twillmann (Plaintiffs) Appellants,

v.

Ray L. JOHNSON, Robert W. Maysack, Laurel Hill Memorial Gardens, Laurel Hill Cemetery Association and Plymouth Securities Company (Defendants) Respondents.

No. 45078.

Supreme Court of Missouri, Division No. 1.

June 10, 1957.

Wm. J. Becker, Clayton, for (plaintiffs) appellants.

Biggs, Hensley, Curtis & Biggs, Ward Fickie, St. Louis, for respondents.

HYDE, Judge.

This is a class action by owners of lots in the Laurel Hill Cemetery, who are members of Laurel Hill Cemetery Association, a nonprofit organization incorporated by pro forma decree, seeking an accounting, determination of rights, interests and ownership of lot owners, payment of its perpetual care fund to the County Clerk, appointment of a receiver and an injunction against defendants. The Court found that plaintiffs were not entitled to the relief prayed for and dismissed plaintiffs' petition. Plaintiffs have appealed.

It is difficult to determine plaintiffs' claims and points relied on because plaintiffs' brief fails to comply with Rule 1.08, 42 V.A.M.S., in so many respects; and the question of our jurisdiction arises.

The Laurel Hill Cemetery Association (referred to as the Association) was organized as a voluntary association in 1923 and was incorporated in 1925. Its articles of agreement provided that all lot owners would be members of the Association and that its property was to be managed and controlled by a Board of Trustees composed of five members. The Cemetery was owned by Plymouth Securities Company (referred to as Plymouth) established as a common law trust by a declaration of trust made and recorded in 1923. A contract was entered into in 1923, between Plymouth and the Association, in which Plymouth agreed to plat, develop and improve the cemetery, convey to the Association all lots bearing a number ending with naught, and "to give ten per cent of all money received from the sale of all remaining lots." The Association agreed to create a perpetual care fund from the proceeds of the sale of lots and agreed to assume the care and maintenance of sections of the cemetery of not less than 25 acres, when they were fully developed and it had a perpetual care fund of at least $100,000 for each section of 25 acres. The Association also agreed to invest the perpetual care fund in certain designated securities and use only the interest or income for care and maintenance.

In 1945, defendants Johnson and Maysack purchased the assets of Plymouth, which included the cemetery and assigned the purchase contract to Laurel Hill Memorial Gardens, Inc., a corporation organized under the laws of Missouri in 1946 (referred to as the Corporation) in which they owned substantially all of the stock. The purchase price was $225,000 and it was agreed that the legal title to all assets should remain in Plymouth until the payment of the purchase price in full, Plymouth, however, to make deeds to purchasers of all lots paid for in full. The Association made an agency agreement, in 1946, with the Mutual Bank and Trust Company of St. Louis, (referred to as the Bank) for the Bank to act as custodian and depository agent for the Association. The Association deposited its cash and securities with the Bank and the Bank collected the income for the Association and agreed to purchase securities for the Association on instructions from the Executive Committee of the Association. This suit was begun in November 1953, and at the end of that year, the principal of the assets of the Association, which was the perpetual care fund in the custody of the Bank, was $126,-122.02 and there was also on hand collected income of $2,164.67. A copy of the Bank's

statement of September 30, 1953, filed with defendants' pleadings showed principal of $125,212.02 and collected income of $10,407.66, making a total of $135,619.68, which is the amount plaintiffs use in connection with their jurisdictional statement. However, the later statement shows that income of $10,407.66 was paid to the Association on December 9, 1953, leaving collected income at the end of the year $2,164.67. The Corporation has paid for care of the cemetery not provided for by the income from the perpetual care fund.

■ Our jurisdiction is invoked on the ground "of the amount of money involved." Our jurisdiction is not determined by the amount of money involved but instead by the amount in dispute. Section 3, Article V of the Constitution, V.A.M.S. gives this court jurisdiction "in all cases where the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars." Plaintiffs say the purpose of this suit is to require defendants to pay into trust in the hands of the County Clerk (Clerk of the County Council) several hundred thousand dollars of "perpetual care fund" moneys belonging to the owners of cemetery lots. They also say "defendants admit that the perpetual care fund now has a balance of in excess of $135,000 and plaintiffs contend that additional money should be accounted for." As to the matter of payment to the County Clerk of the amount of the perpetual care fund in the custody of the Bank, there is no dispute about that amount because all parties rely on the Bank's statement as to the amount. As to the claim that additional money should be accounted for, there is no claim for any specific amount in the pleadings and nothing in the record to show any definite amount. The only thing plaintiffs point to is the following statement in the minutes of a meeting of the trustees of Plymouth of January 5, 1954:

| | |
|---|---|
| "Gross sales of lots . | $1,861,557.75 |
| Cancellations . . . | 703,712.40 |
| Net sales . . . . | $1,157,845.35" |

■ Plaintiffs argue that defendants should be required to account to the perpetual care fund for 10% of the above amount shown as "Cancellations". However, this statement does not show that any such amount was collected on sales of lots that were cancelled or what amount, if any, was collected on cancellations. Furthermore, this matter is now completely eliminated from the case by plaintiffs' failure to preserve it for appellate review, by stating it as a ground in their motion for new trial, there being nothing in their motion for new trial concerning the matter of accounting for any additional money.

■ As we have said, there is no dispute about the amount now in the perpetual care fund of the Association in the custody of the Bank and there is no evidence to show this is not the correct amount of the perpetual care fund established. The only controversy concerning it is whether this fund must be placed in the custody of the County Court because of the provisions of Sections 214.150, 214.160, 214.170 and 214.180. (References are to RSMo 1949 and V.A.M.S.) The County Court (now County Council) of St. Louis County is not a party to this case and is not asking for custody or control of this fund. The allegations of the petition concerning this matter were that defendants had not paid the perpetual care funds to the County Clerk or County Council and had not been designated by the County Council to administer the fund. The relief asked concerning it was that defendants be ordered to pay the perpetual care fund to the County Clerk. We have consistently held, where the issue is the control of a fund between parties to a case, instead of permanent divestiture of title, the amount that determines our jurisdiction is the financial value of the control, or loss of control, and not the value of the property controlled; and this value must affirmatively appear from the record to be in excess of $7,500 to give us jurisdiction. (As to trustees see Dyas v. Dyas, Mo.Sup., 163 S.W.2d 557; Hamilton v. Robinson, Mo.Sup., 146 S.W.2d 601; see

also Commercial Bank of Jamesport v. Songer, Mo.Sup., 62 S.W.2d 903; as to guardians see Bowles v. Troll, 262 Mo. 377, 171 S.W. 326; as to administrators and executors see Menzi v. White, 360 Mo. 319, 228 S.W.2d 700, 17 A.L.R.2d 796; Fields v. Luck, 327 Mo. 113, 34 S.W.2d 710; In re Wilson's Estate, 320 Mo. 975, 8 S.W.2d 973.) The evidence in this case does not show that the Association receives anything for the administration of the perpetual care fund and we think the inferences are that it does not, as this is only the management of its own property. While the Bank is paid for the services it renders in connection with the fund, the Bank is not a party to this action. (Under its contract, the Bank is not a trustee with title to the fund.) There is, likewise, nothing to show that the County Council would receive anything for the administration of the fund. The Association is the owner of the fund for the benefit of its members, the owners of lots in the cemetery, and they would remain the beneficial owners in any event. Furthermore, the County Council is not seeking in this suit to take either temporary or permanent control of the fund from the Association; it is not even a party. Thus, there is no real issue as to title to the fund between the Association and any party to this suit claiming to be the owner of it. If the County Council were a party to this case seeking a permanent divestiture of title from the Association we would have a different case. Our conclusion is that it does not affirmatively appear from the record herein that the financial benefit or loss to any party to this suit would be in excess of $7,500, because of the relief sought by plaintiffs. It is well settled that the fact that plaintiffs sought the appointment of a receiver for the corporation would not give us jurisdiction. Rust v. Geneva Inv. Co., Mo.Sup., 124 S.W.2d 1135; Ross v. Speed-O Corporation, 343 Mo. 500, 121 S.W.2d 865; Stipp v. Bailey, 331 Mo. 374, 53 S.W.2d 872. We must hold on the record

before us that we do not have jurisdiction of this case.

The case is transferred to the St. Louis Court of Appeals.

All concur.