[Civ. No. 5132. Third Appellate District.—May 1, 1934.]

SYLVIA JANE QUAIL, Petitioner, v. INDUSTRIAL AC-
CIDENT COMMISSION et al., Respondents.

Chester E. Watson for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

THOMPSON, J.—By means of *certiorari* the petitioner seeks to review the findings of the Industrial Accident Commission to the effect that her husband, Frank E. Quail, who died while he was employed in the state highway division, did not die as a result of injuries sustained from an accident occurring in the course of his employment. Compensation was denied.

The deceased was sixty-five years of age. He was five feet eleven inches tall and weighed 190 pounds. For five years he had been employed by the State of California as assistant highway maintenance engineer. March 9, 1933, he drove an automobile in the course of his employment from Sacramento to Donner Lake over the Sierra Nevadas. On this journey he reached an elevation of 7,500 feet. Upon his return that day, after passing the summit, an accident occurred. The car left the highway and turned over. It rested upon its left side at a point about eight feet from the highway. Mr. Quail, apparently uninjured, climbed out over the door, and, securing the aid of a passing truck, they hauled the car back on to the highway. It was slightly damaged, but he was able to drive the machine on its own power. He returned to Auburn that night, where he remained in the hotel. He claimed to have been unable to sleep that night on account of the pounding of his heart. The following day he returned to Sacramento and reported the accident. Feeling unwell, upon the advice of his superior officer, Dennis, he drove home to Stockton. He reclined upon a bed during the afternoon, complaining of difficulty in breathing.

Dr. H. S. Chapman, the family physician, was called about 5 o'clock that day. He reported finding the patient restless, with ashen-colored face. He was breathing hard and fast. He complained of pain in the right chest. He had a sense of impending death. It appears from the record that on March 1st, which was eight days before the accident occurred, Mr. Quail suffered an acute attack of epigastric pain. He then visited a doctor for medical aid. From that date to the time of his death he suffered a recurrence of such pains, together with nausea, vomiting and constipation. He also had acute precordial pains and pains in the back and beneath the scapulae. These are symptoms of the heart

trouble which resulted in his subsequent death. After examining the patient the doctor found no external bruises, contusions or apparent injuries as a result of the automobile accident, but discovered that he had dilated pupils of the eyes, a pulse beat of 170, fibillation and dilation, together with murmuring of the heart. He sent the patient to bed and prescribed medicine for his condition. At 7 o'clock that night Mr. Quail died as a result of what the doctor diagnosed as coronary occlusion. The doctor performed an autopsy and reported that he discovered an enlarged heart with a very sclerotic condition of the coronary arteries. His testimony contains the following expert medical opinion regarding the cause of death, ''I believe that death in this case was due to coronary occlusion. Had he been put to bed at absolute rest on March 1st, his life might have been prolonged. The (automobile) accident was only a coincident and I believe had little or nothing to do with his demise.''

The record contains no substantial evidence in conflict with the doctor's expert conclusions regarding the cause of death.

It does, however, appear from a statement made by C. E. Bramwell, a chiropractor, that Mr. Quail visited his office at 2:30 o'clock on the afternoon of March 10th and was treated for a dislocation of the spine. Mr. Quail stated to the chiropractor that he had had an automobile accident the preceding day, due to a defect in the free-wheeling system of his machine, and that he left the highway and turned over because he was unable to control his brakes. He was perspiring profusely. He said that he had hurt his neck and that he thought he had a severe cold. There appears to have been no complaint of pain in the region of the heart and no examination in that regard. After the adjusting of the vertebra, the patient seemed to be feeling better. He was instructed to go home and remain quiet, and report his condition the following day. That night he died. In the report of the chiropractor he said: ''It is my opinion that the heart had been greatly strained and overtaxed as a result of the accident and that his death was due to that, together with the injury or displacement of the axis vertebra which in my opinion exacerbated the heart condition.''

It is contended there is no substantial evidence to refute the theory that Mr. Quail died as a result of the automo-

bile accident, and that the shock therefrom aggravated the chronic defect of his heart, and that since that accident occurred in the course of his employment, the widow is therefore entitled to compensation. It is also urged that the effect upon his heart of traveling in a high elevation was necessarily detrimental to the weakened condition of that organ.

There is no evidence in the record, expert or otherwise, upon which a finding would be justified that the deceased died from the effect upon his heart of traveling in a high altitude. It has been definitely determined that when heart failure is precipitated by the physical efforts of a deceased person in the course of his employment, or by the effect upon his heart of a high altitude, even though he may have previously had a chronic diseased or defective heart, that condition will not warrant the denial of compensation. (*Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712].) In the present case the evidence fails to show that the heart failure was precipitated by the effect of a high altitude.

It is settled law that the findings of the commission will not be disturbed on *certiorari* when they are supported by substantial evidence. (*Walter* v. *Industrial Acc. Com.*, 209 Cal. 635 [289 Pac. 627]; *Murray* v. *Industrial Acc. Com.*, 216 Cal. 340 [14 Pac. (2d) 301]; *Brandon* v. *Industrial Acc. Com.*, 211 Cal. 341 [294 Pac. 1064].)

In the present case the findings of the commission that "said employee died on March 10, 1933, from coronary occlusion, and death was not caused in whole or in part by an injury arising out of and in the course of the employee's employment", are largely dependent for support upon the opinion testimony of a medical expert. In support of the foregoing findings regarding the cause of death, we are bound by the evidence of Dr. Chapman, who was the family physician of the deceased, who treated him for his heart ailment, and who subsequently made an autopsy on the body of the deceased. He found an aggravated, chronic sclerotic condition of the heart and adjacent arteries. A serious ailment which evidently affected the heart had afflicted him several days before the accident occurred. He died of coronary occlusion. From these conditions the doctor might naturally conclude that the patient, under no

circumstances, could long survive. He does say that if the patient had been put to bed on March 1st, when the first attack occurred, and remained there with absolute rest, his life might have been prolonged. There is no intimation that the accident contributed towards, or aggravated the heart ailment which caused his death. Upon the contrary, the doctor says the accident was only a coincident, and that he believed it had little or nothing to do with his demise. This opinion was based upon the doctor's treatment of the patient and his post-mortem examination of the heart and adjacent arteries. This furnishes adequate expert medical evidence to support the findings of the commission denying compensation. (*Bethlehem Shipbuilding Corp.* v. *Industrial Acc. Com.*, 181 Cal. 500 [185 Pac. 179, 7 A. L. R. 1180]; *McNamara* v. *Industrial Acc. Com.*, 130 Cal. App. 284 [20 Pac. (2d) 53].) There appears to be nothing in conflict with the foregoing conclusion in the cases of *Knock* v. *Industrial Acc. Com.*, *supra; Fogarty* v. *Department of Industrial Relations*, 206 Cal. 102 [273 Pac. 791], or *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118 [29 Pac. (2d) 852], upon which the petitioner relies. In the case last cited the court says: "The questions of the weight of the evidence and the credibility of the witnesses are for the commission and if there is any evidence or reasonable inference which will support the commission's finding, the reviewing court has no power to disturb it."

The petitioner relies upon the statement of the chiropractor, C. E. Bramwell, in support of her application to annul the commission's denial of compensation. The chiropractor did say that the heart had been greatly strained and overtaxed as a result of the accident and expressed his opinion that death was due to exacerbation of the heart condition. There is no evidence he had examined the patient for a heart affliction, or that he had any means of securing information upon which he could base that opinion. We specifically refrain from deciding whether a chiropractor may qualify himself as an expert witness to render a competent opinion regarding the cause of death resulting from heart ailments, although section 1870, subdivision 9, of the Code of Civil Procedure authorizes the admission of the opinion of one who is skilled in any science, art or trade, regarding his specialty, and it may be true that

a chiropractor may be qualified to give expert evidence with relation to heart ailments. The term "Chiropractic" is defined as a system of curing disease by means of adjusting the joints of the spine by hand. (Webster's New International Dictionary, p. 386; *Cummings* v. *State,* 214 Ala. 209 [106 So. 852, 854].) A chiropractor is not ordinarily a specialist regarding the diseases of the internal organs. He is precluded by statute from practicing medicine in the usual acceptation of that term. (Stats. 1923, and amendments, Act 4811, sec. 7; vol. 2, Deering's Gen. Laws of 1931, p. 2375.) Even though a chiropractor may qualify as a witness so as to render competent an opinion regarding the cause of death resulting from an ailment of the heart, in the present case the statement of the chiropractor merely creates a conflict of evidence. It does not appear that he knew the patient had any symptoms of a heart ailment, or that he had even complained of any pain or ailment in connection with the heart. He made no examination by means of a stethoscope or otherwise to ascertain the condition of his heart. It does not appear that he even knew the patient had suffered severe epigastric pains for several days before his death occurred. He did not participate in the autopsy. He merely treated the patient for a dislocated vertebra. The record is devoid of evidence of knowledge on the part of Dr. Bramwell which will furnish any basis for his conclusion regarding the cause of death. His conclusion in that regard appears to have been the result of speculation, and therefore of slight value.

The findings and decision of the commission are affirmed.

Plummer, J., and Pullen, P. J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1934.