[Civ. No. 9021.   Third Dist.   Feb. 13, 1957.]

MILDRED DANIELS et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Gilbert Moody for Petitioners.

E. A. Corten, Daniel C. Murphy, Donald Gallagher and Loton Wells for Respondents.

PEEK, J.—Petitioners, the surviving widow and daughter of Jesse Daniels, seek review of a finding of the Industrial Accident Commission that his death did not arise out of the course of his employment and of the subsequent decision denying them an award.

Daniels was employed by the Turlock Irrigation District as a trouble shooter. His duties included the repair of his employer's facilities such as transformers, meters, etc., as well as all types of electrical appliances and occasionally included the climbing of poles. On a windy and quite cold afternoon he and a coworker were engaged in climbing poles about 35 or 40 feet above the ground and pulling lines so as to take the slack out of the primary wires. While on the third pole, Daniels began coughing and then vomited blood. The coworker saw Daniels' body go limp and fall "back in his safety belt." He was removed from the pole and transported to a hospital in Turlock where he died that same evening.

A doctor who had treated Daniels for a stomach disorder in 1953 found no indication of heart trouble when he gave him a physical examination at that time. On the day of his death he told his wife that he hadn't felt better in weeks, and a few minutes before he became ill he told his coworker that "he felt better than he felt for several days."

The attending physician was unable to make a definite diagnosis, but noted that the possibilities included acute coronary thrombosis or acute pulmonary embolism. An electrocardiogram showed changes suggesting the possibility of acute coronary thrombosis. Since the cause of death was

not definitely established, a post mortem was performed by the coroner, Dr. Ransom. He testified that he found that the lungs were dark and passive congested. He stated the cause of death was a ruptured tricuspid valve which in his opinion was due to strain imposed on the heart by the congestion of the lungs. He also said that the physical strain of work was a factor in the lung congestion. The death certificate stated the cause of death to be "Rupture of Tricuspid Valve from massive passive congestion of complete lung tissue."

A Dr. Smith who was called by the insurer testified that a diagnosis was not possible on the information available. He was of the opinion that if the valve had ruptured, it was a diseased valve. He suggested that further pathological examination would be of value to determine the cause of death. At the conclusion of Dr. Smith's direct examination, the hearing was adjourned without cross-examination by petitioners' counsel.

Some time later the body was exhumed and a second autopsy performed. The autopsy report concluded: "The cause of death is a thrombosis of the right coronary artery which is quite recent. The changes in the myocardium which consisted largely of hyperemia and some interstitial hemorrhage was all that was found that would indicate that the occlusion was very recent. There is marked edema and congestion of the lungs. Careful examination of all the heart valves and especially the tricuspid valve showed no evidence of rupture or previous disease."

At the next hearing, a Dr. Thompson, in response to a hypothetical question, testified that in his opinion the death was due to a coronary occlusion, but he did not believe it was work-connected. The opinion was qualified to the extent that if Mr. Daniels only climbed poles occasionally, then it might have been precipitated by his work.

After Dr. Thompson's testimony, Mrs. Daniels testified that climbing poles was not a part of her husband's normal duties, and that he only did so occasionally.

On the basis of the testimony and the medical reports filed, the referee made a finding that the injury arose out of and was in the course of the decedent's employment, and an award was made in favor of petitioners.

Upon motion of the insurance carrier, reconsideration was granted by the Commission, and the matter was submitted to Dr. Meyer Friedman, who reviewed the record and submitted a report. He stated therein that the cause of death was a

thrombus occluding the right coronary artery near the site of old atherosclerotic deposits, and that following this occlusion there was necrosis and loss of function of certain areas of the left ventricle of the heart, which interfered with the pumping action of the left side of the heart so that blood dammed up in the pulmonary circulation, causing the type of chronic passive congestion that was found. The report included the statement that in view of the fact that the thrombus was composed of blood, the statistical odds favored the formation of the clot in the lumen of the coronary vessel, and if so formed physical exercise had nothing to do with it. The report further stated: "If the law is liberal enough to take cognizance of the fact that occasionally such clots result from a hemorrhage within the wall of the coronary artery . . . then the work could be considered as contributory because the excessive work demanded of the heart could have led to its violent contractions, with a contortion of the coronary vessels and a consequent small hemorrhage of one of the vessels within the wall of the coronary artery itself. But as I stated, I think there well might have been some histological evidence of such a hemorrhage which *were* was not in Dr. Purvis's report." (Dr. Purvis performed the second autopsy.) As a result the commission annulled the previous award.

Petitioners first contend that the evidence is insufficient to sustain the finding that decedent did not sustain injury arising out of his employment. In order to be entitled to an award, petitioners must show a causal connection between the employment and the injury. (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 120 Cal.App.2d 423 [261 P.2d 25].) And where there is substantial evidence to sustain the finding, the determination of the Industrial Accident Commission is conclusive. (*Quail* v. *Industrial Acc. Com.*, 138 Cal.App. 412 [32 P.2d 402].) On the basis of Dr. Friedman's report, we are constrained to say that the decision is supported by substantial evidence.

Although there is language in at least two California cases which indicates that strain plus heart attack equals award (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App. 2d 555, 563 [166 P.2d 908]; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492, 496-497 [175 P.2d 823]), neither of the cited cases has eliminated the question of causal connection. That issue is one of fact and, as the court in the Liberty Mutual case observed, until the Legislature, by

statute, compels a more consistent policy on the part of the commission, the courts must affirm the commission wherever there is competent substantial evidence to support its findings. (P. 560.)

█ Petitioners' second contention is that they were denied an opportunity to cross-examine Dr. Smith. The record shows that after the direct examination the hearing was adjourned and at the subsequent hearing Dr. Smith was not produced. Counsel for petitioners made no objection, and in fact agreed to submission of the case on the record. He now asserts that he agreed to submission without considering the fact that the case might be submitted to an independent medical examiner who would use Dr. Smith's report and his testimony. Counsel states that when he received a copy of Dr. Friedman's report which was filed on December 13, 1955, he wrote a letter dated December 28, 1955, to the Commission requesting that if their decision was to be adverse to him he would like an opportunity to cross-examine Dr. Smith. The letter was received by the Industrial Accident Commission on December 30, 1955. The Commission, however, had signed the order adverse to petitioners on December 29, 1955. Petitioners then asked for reconsideration. Through a clerical error, petitioners' letter of December 28, 1955, was not brought to the attention of the Commission when it considered the petition for reconsideration. The report of the Commission denying reconsideration read in part: "Since counsel for applicant submitted his case without requesting an opportunity to cross-examine Dr. Edmund L. Smith and has not thereafter sought such permission, until after the issuance of an adverse decision, any application at this time should be denied." The commission was in error that the request was not made before an adverse decision was made. However, we are inclined to hold that petitioners waived any right to cross-examine Dr. Smith. At best, counsel's request to cross-examine was qualified and conditional. In other words he only desired to do so if the commission's decision was going to be adverse. Since the right to cross-examine can be waived (see Wigmore on Evidence, § 1371), counsel should have foreclosed submission unless and until he did so cross-examine.

The order is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied April 10, 1957.