The Honorable Alvin J. Taylor Secretary, Department of Health and Rehabilitative Services
QUESTION:
Is a chiropractic physician licensed pursuant to ch. 460 a `competent medical authority' within the scope of s. 232.032(3)(b) for the purpose of certifying in writing that a child should be exempted for medical reasons from the immunization requirements imposed by s. 232.032?
SUMMARY:
A chiropractic physician licensed under ch. 460, F.S., is not a `competent medical authority' within the purview of s. 232.032(3)(b), F.S., as amended, for the purpose of certifying in writing that a child should be exempted for medical reasons from the immunization requirements imposed by s. 232.032.
Section 232.032 (as amended by ch. 79-288, Laws of Florida, effective July 1, 1980), provides in pertinent part:
232.032 Immunication against communicable diseases; school attendance requirements; exemptions. —
 (1) The Department of Health and Rehabilitative Services, after consultation with the Department of Education, shall promulgate rules and regulations governing the immunization
of children against, or the testing for, preventable communicable diseases. Immunizations shall be required for poliomyelitis, smallpox, diphtheria, rubeola, rubella, pertussis, and tetanus, and may be required for other communicable diseases as determined by the Department of Health and Rehabilitative Services. The manner and frequency of administration of the immunization or testing shall conform to recognized standards of medical practice. The Department of Health and Rehabilitative Services shall supervise and secure the enforcement of the required immunization.
 (2) The school board of each district and the governing authority of each nonpublic school shall require each child
who is entitled to admittance to kindergarten, or any other initial entrance into a Florida public or nonpublic school, to present a certification of immunization for the prevention of those communicable diseases for which immunization is required by the Department of Health and Rehabilitative Services.
(3) The provisions of this section shall not apply if:
 (a) The parent or guardian of the child objects in writing that the administration of immunizing agents conflicts with his religious tenets or practices; or
 (b) A competent medical authority certifies in writing that the child should be exempt from the required immunication for medical reasons; or
 (c) The Department of Health and Rehabilitative Services determines that according to recognized standards of medical practice any required immunization is unnecessary or hazardous. (Emphasis supplied.)
See also Rule 10D-3.88, F.A.C., relating to `control of communicable diseases,' which implements s. 232.032, and HRS Form No. 680, Parts A, B, and C.
Section 232.032 provides no definition of the term `competent medical authority,' as it is used in subsection (3)(b). Additionally, the term `medical' is repeated elsewhere in s. 232.032 — `recognized standards of medical practice'; `medical reasons'; `medical practice', but no definition is provided for it either. The Random House Dictionary of the English Language, Unabridged Edition, p. 300, defines the adjective `competent' to mean `having suitable or sufficient skill, knowledge, experience, etc., for some purpose; properly qualified.' Webster's Third New International Dictionary defines `competent' as `possessed of knowledge, judgment, strength, or skill needed to perform an indicated action'; `possessed of or characterized by marked or sufficient aptitude, skill, strength, or knowledge'; `legally
qualified or capable.' (Emphasis supplied.) And Black's Law Dictionary, (5th ed.), defines `competent' as `duly qualified'; `answering all requirements'; `having sufficient ability or authority;' `possessing the requisite natural or legalqualifications . . . .' (Emphasis supplied.) Cf. 40 A.L.R. 1264, which construes the term `competent physician,' noting that competent means both licensed, and competent in a particular case. `Medical' is defined by Webster's Third New International Dictionary as `of, or relating to, or concerned with physicians or with the practice of medicine often as distinguished from surgery . . . requiring or devoted to medical treatment [as in] pneumonia is a [medical] disease distinguished from surgical.' Webster's defines `materia medica' as `a branch of medical science that treats of the sources, nature, properties, and preparation of the drugs used in medicine.' See also AGO 042-25, January 15, 1942, Biennial Report of the Attorney General, 1941-1942, p. 628 (discussing `materia medica'). And, Black's Law Dictionary defines `medical' as `pertaining, relating or belonging to the study and practice of medicine . . .' that same dictionary defines `medicine' as `[t]he science and art dealing with the prevention, cure and alleviation of diseases; in a narrower sense that part of the science and art of restoring and preserving health which isthe province of the physician as distinguished from the surgeonand obstetrician.' (Emphasis supplied.) See also 70 C.J.S.Physicians and Surgeons, s. 1, p. 808; Louisiana State Board of Medical Examiners v. Martindale, 83 So.2d 544, 546 (2nd Cir. Ct. App., La. 1955), holding that the `practice of medicine is a pursuit very generally known and understood. It is understood to mean the diagnosis and application and use of medicines and drugs for curing, mitigating or relieving bodily diseases or conditions.'
The Random House Dictionary of the English Language, Unabridged Edition, at p. 100, defines the noun `authority,' among other things, to mean `an accepted source of information, advice, etc. An expert on a subject.' `Authority' is defined by Black's Law Dictionary as the `right to exercise powers . . . .' That same dictionary defines `authorize' as `to empower; to give a right or authority to act' and defines `authorized' as `possessed of authority; that is, possessed of legal or rightful powers, the synonym of which is competency.' (Emphasis supplied.) And, Webster's indicates that `authorize' is synonymous with `license.' Webster's Third New International Dictionary defines `chiropractic' as `a system of healing based upon the theory that disease results from a lack of normal nerve function and employing treatment by scientific manipulation and specific adjustment of bodily structures . . . .' (Emphasis supplied.) The Random House Dictionary, supra, at p. 258, defines the term to mean `a therapeutic system based upon the premise that disease is caused by interference with nerve function, the method being to restore normal condition by adjusting the segments of the spinal column.' Black's Law Dictionary defines `chiropractic' as `a method of detecting and correcting by manual or mechanical means structuralimbalance, distortion or subluxations in the human body to removenerve interferences where such is the result of or related todistortion, misalignment or subluxations of or in the vertebralcolumn,' and additionally, as `a system of therapeutic treatment, through adjusting of articulations of [the] human body, particularly those of the spine' and as the `specific science that removes pressure on the nerves by the adjustment of the spinal vertebrae.' (Emphasis supplied.) Additionally, 70 C.J.S.Physicians and Surgeons s. 1, p. 804, defines `chiropractic' as a `system of healing that treats disease by manipulation of the spinal column, a system or the practice, of adjusting the joints, especially of the spine, by hand for the curing of disease; the specific science that removes pressure on the nerves by the adjustment of the spinal vertebrae; a system of therapeutic treatment for various diseases, through the adjustment of articulations of the human body, particularly those of the spine, with the object of relieving pressure or tension on nerve filaments; a system of manipulations which aims to cure disease by the mechanical restoration of displaced or subluxated bones, especially the vertebrae, to their normal relation.' See also
Quail v. Industrial Accident Commission of California,32 P.2d 402, 404, 138 Cal.App. 412 (1934); and People v. Fowler,84 P.2d 326 (1938), in which the court exhaustively defines the practice of chiropractic. The Fowler court also noted that `the practice authorized must be `chiropractic' and it must be `as taught in chiropractic schools or colleges." 84 P.2d at 331. Additionally, the court in People v. Nunn, 150 P.2d 476 at 480 (1944), noted that `[the chiropractor] may not invade the field of medicine or surgery or administer drugs or medicines included within materiamedica. He is limited to the use of mechanized hygienic measures
incident to the care of the body which do not invade the field ofmedicine or surgery.' (Emphasis supplied.) The holder of a license or certificate to practice chiropractic is entitled to practice chiropractics as that term is defined or construed, and to use such measures as are permitted by statute. However, such a licensee may not indulge in practice outside the field to which the practice of chiropractic has been limited by statute. 70 C.J.S. Physicians and Surgeons s. 15, p. 869. Section460.403(3)(a), F.S., provides the following definition of the `practice of chiropractic':
 [a] noncombative principle and practice consisting of the science of the adjustment, manipulation, and treatment of the human body in which vertebral subluxations and other malpositioned articulations and structures that are interfering with the normal generation, transmission, and expression of nerve impulse between the brain, organs, and tissue cells of the body, thereby causing disease, are adjusted, manipulated, or treated, thus restoring the normal flow of nerve impulse which produces normal function and consequent health. (Emphasis supplied.)
As noted above, `medicine' is defined in the narrower sense as `that part of the science and art of restoring and preserving health which is the province of the physician as distinguished from the surgeon and obstetrician.' Black's Law Dictionary, supra, and by The Random House Dictionary, supra, at 890, as the art or science of treating disease with drugs or curative substances as distinguished from surgery and obstetrics. Thus, it would appear from the above-cited definitions that, in a broader sense, `medicine' is comprised of three parts — medicine proper (materia medica), surgery, and obstetrics. And, s. 460.403(3)(c), F.S., in describing the methods of treatment which chiropractic physicians are authorized to use, provides that:
 Chiropractic physicians may adjust, manipulate, or treat the human body by manual, mechanical, electrical, or natural methods or by the use of physical means or physiotherapy, including light, heat, water, or exercise, or by the oral administration of foods, food concentrates, and food extracts and may apply first aid and hygiene, but chiropractic physicians are expressly prohibited from prescribing or administering to any person any medicine or drug, from performing any surgery except as stated herein, or from practicing obstetrics. (Emphasis supplied.)
Accordingly, it would appear that chiropractic physicians are excluded by statute and prohibited from the practice of `medicine,' and should not be deemed `competent medical authorit[ies]' within the purview of s. 232.032(3)(b). In any event, by the terms of their own licensing law, chiropractic physicians are not deemed competent to administer drugs or medicines, i.e., to practice medicine or materia medica. And it seems logical to assume that competency to administer drugs and medicines necessarily requires or includes competency to decide whether a particular drug or medicine is to be administered to or withheld from a particular individual for medical reasons or to determine the existence of some altered susceptibility due to a first inoculation or treatment or reaction thereto or other reactions to immunization agents or substances.
I also note that pertinent chapters of Title XXXI, `Regulation of Professions and Occupations,' indicate that the Legislature intended to establish comprehensive regulation of all `health care practitioners' within chs. 458, 459, 460, 461, 462, 463, and 464. But ch. 458 alone sets forth the regulatory scheme for `medical practice.' Section 458.305(3) defines the `practice of medicine' as:
 . . . the diagnosis, treatment, operation, or prescription for any human disease, pain, injury, deformity, or other physical or mental condition. (Emphasis supplied.)
And s. 458.303(1)(a) expressly provides that subsection (3) of s.458.305 (and most of the other provisions of ch. 458) have no application to other duly licensed health care practitioners acting within the scope of their practice authorized by statute. Therefore, the proscription of ch. 458 against the unlawful practice of medicine does not encompass those health care practitioners regulated by ch. 460 (Chiropractic) within the statutorily prescribed ambit of the chiropractic discipline.
In past years, my predecessors in office opined on several occasions concerning the statutory authority or competency of chiropractic physicians. For example, AGO 064-175 concluded that licensed chiropractors were authorized to sign death certificates pursuant to an express statutory authorization in ch. 460, F.S.Accord AGO 056.40. Similarly, AGO 064-11 concluded that chiropractors were `recognized practitioners' within the meaning and for the purposes of s. 440.13, F.S. Additionally, in AGO 067-51, it was concluded that practicing chiropractors were included within the term `practicing physicians' for purposes of exemption from jury duty. And, AGO 052-183, June 11, 1952, Biennial Report of the Attorney General, 1951-1952, p. 579, concluded that chiropractors were not authorized by former s. 460.11(2), F.S., to use `electrical short wave disthermy' to remove tonsils. Attorney General Opinion 052-304, October 29, 1952, Biennial Report of the Attorney General, 1951-1952, p. 580, concluded that chiropractors were not authorized to practice in a particular county hospital since a pertinent special law authorized only physicians and surgeons admitted to the practice of medicine or surgery in Florida to practice there. See also AGO 042-355, July 16, 1942, Biennial Report to the Attorney General, 1941-1942, p. 630 (concluding that the terms `physician' and `family practitioner' were sufficiently broad to include chiropractic physicians among the category of physicians authorized to issue health certificates for waiters, waitresses, and food handlers), and AGO 041-166, March 25, 1941, Biennial Report of the Attorney General, 1941-1942, p. 572 (concluding that chiropractors were included in the category of `qualified physician or surgeon' as that term was used in the Workmen's Compensation Act, and authorized to collect fees for services rendered to injured workers). In the latter opinion, it was aptly noted that:
 Each case, it seems to me, must be determined by its own facts. Undoubtedly, certain diseases or injuries are incapable of treatment by chiropractic methods . . . . The statute, I think, requires both legal competency and competency in the particular case. Where the practitioner is licensed to practice the healing art by the lawful though limited methods of chiropractic and he is competent to treat the claimant in the particular case for the injury in question, then in my opinion he would be entitled to an award for such services performed by him. (Emphasis supplied.)
In each instance, recognition of lawful authority or competency to perform a particular act was limited to the circumstances of each opinion, and predicated upon the particular statutory language applicable to a given situation. As such, these earlier opinions do not serve as persuasive authority or precedent for the proposition that chiropractors should be classified `competent medical authorities' for the purposes of s. 232.032, F.S.
Additionally, I am not aware of nor have you brought to my attention any clinical studies, treatises, or other authorities which demonstrate that any of the conditions enumerated in s.460.403(3)(a) cause, produce or lead to any of the diseases listed in s. 232.032(1). Specifically, I am not aware, nor have you brought to my attention, any scientific theory or authority that the adjustment, manipulation, and treatment of vertebral subluxations or malpositioned articulations which are interfering with a normal nerve impulse function, are medically indicated treatments for a patient afflicted with any of the bacterial or viral organisms or infections associated with or involved in any of the communicable diseases enumerated in s. 232.032(1).
I express no opinion as to which categories of medical practitioners would possess the requisite qualifications, knowledge, training or expertise to furnish the certification required by s. 232.032, F.S. It is not the prerogative of this office, or within our competency or training, to determine such an issue. Rather, it is a question more properly resolved by the expertise of the Department of Health and Rehabilitative Services.See s. 232.032(1) (providing that the department shall promulgate rules and regulations governing the immunization of children against preventable communicable diseases, and further providing that the department may require immunization for communicable diseases other than those enumerated in that statute by the Legislature). I note, however, that allergists and immunologists would possibly be included within the category of medical practitioners who would be qualified to make the medical determinations requisite for and precedent to making the above described certification.
Prepared by: Anne Curtis Terry, Assistant Attorney General